Francisco Rosario **SOLER,** et al., Plaintiffs,

v.

**G & U, INC.,** Charles **Gratz,** d/b/a **Charles Gratz Farm,** Defendants.

Pablo **LIVAS,** et al., Plaintiffs,

v.

**BIERSTINE FARMS, INC.,** Defendant.

Gilberto **GONZALEZ,** et al., Plaintiffs,

v.

**CEDAR VALLEY GROWERS, INC.,** Defendant.

Freddy **VALENTIN,** et al., Plaintiffs,

v.

Raymund **MYRUSKI,** Defendant.

Cecelio **ENCARNACION,** et al., Plaintiffs,

v.

**W.K.W. FARMS, INC.,** Defendant.

Nos. 78 Civ. 6252 (CHT), 78 Civ. 6258 (CHT) to 78 Civ. 6261 (CHT).

United States District Court, S.D. New York.

March 17, 1987.

---

Farmworker Legal Services of New York, Inc., Newburgh, N.Y., for plaintiffs; Thomas A. Harnett, Claudia A. Smith, of counsel.

Keane & Beane, P.C., White Plains, N.Y., for defendants; Edward F. Beane, Donald S. Krueger, Judson K. Siebert, of counsel.

TENNEY, District Judge.

This matter is pending before the Court on plaintiffs' request for an award of attorneys' fees under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b) (Supp.1986). Plaintiffs' counsel, Farmworker Legal Services of New York, Inc., has submitted extensive time records and affidavits supporting its motion for payment of 1558.20 hours of time valued at $202,971. Plaintiffs' counsel also asks that the award be enlarged by 25%, or $50,742, claiming that such a "multiplier" is warranted due to the exceptional results achieved and the contingent nature of the case. In addition, plaintiffs seek costs totaling $7,098. The total amount requested by plaintiffs is $260,811.

Defendants oppose the granting of plaintiffs' motion. They object to an award of fees compensating for plaintiffs' involvement in the administrative proceedings. Defendants also argue that the time records submitted by the plaintiffs are in-

sufficient to document their claims. In addition, defendants assert that the hourly rates requested by plaintiffs are unreasonably high. Finally, defendants argue that application of a multiplier is unwarranted in this case.

For the reasons set forth below, the defendants are ordered to pay a total of $123,832.27. The award figure was calculated in several steps.

Initially, the Court has established the total number of hours reasonably expended in the case. This was accomplished by carefully examining the time requests, and in light of the factors discussed below, making appropriate and reasonable reductions in the hours allowed.

The Court then has divided the litigation into two phases and established a reasonable hourly rate for each attorney in each phase of the case. A lodestar figure was reached by multiplying the reasonable number of hours by the reasonable hourly rate. The Court finds that enhancement of the lodestar amount is not warranted. The final award is composed of the lodestar amount plus the plaintiffs' reasonable costs.

## BACKGROUND

The case at bar arose out of an action filed by approximately 100 migrant farm workers under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (1978 & Supp. 1986), against defendant growers who employed the plaintiffs at various times. The plaintiffs alleged that the minimum wage provisions of the FLSA, 29 U.S.C. § 206, were breached because defendants wrongfully deducted wages from plaintiffs' salary for shelter provided for plaintiffs. The plaintiffs claimed that no deductions should have been made since the housing was provided for the employers' benefit rather than for the benefit of the workers. This litigation has a lengthy history. In its initial decision on this matter, this Court stayed the litigation before it, pending an

administrative determination. *Soler v. G & U, Inc.*, 477 F.Supp. 102 (S.D.N.Y.1979). After the administrative determination was made, both sides sought judicial review. This Court granted summary judgment in favor of the plaintiffs. *Soler*, 615 F.Supp. 736 (S.D.N.Y.1985). In its most recent opinion, the Court (1) found defendants' violations of the FLSA were willful, and (2) awarded liquidated damages to the plaintiffs. *Soler*, 628 F.Supp. 720 (S.D.N.Y. 1986).

The plaintiffs now petition the Court to grant them attorneys' fees and costs pursuant to § 216(b) of the FLSA.

## DISCUSSION

To resolve the multiple issues raised by plaintiffs in their motion for fees and the defendants' objections thereto, this Court must be supplied with contemporaneous time records and documentation for all hours requested after June 25, 1983.[1] *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983). Plaintiffs' counsel has the burden of documenting and proving plaintiffs' claims. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). However, the party opposing the motion for attorneys' fees must file sufficient objections, avoiding mere conclusory allegations. *Blum v. Stenson*, 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891 (1984); *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1324 (D.C.Cir.1982) [hereinafter cited as *Veterans*]. In addition, neither side has asked the Court for an evidentiary hearing so consequently, both sides have waived any existing right to one. *Miles v. Sampson*, 675 F.2d 5, 9–10 (1st Cir.1982).

### 1. *Ascertaining the Lodestar*

To decide on a fair and reasonable award of attorneys' fees, the Court employs a two step approach. First, the Court determines the amount of hours reasonably spent in

---

1. Although the Court does not require contemporaneous documentation for time expended before June 25, 1983, the Court does require that the reconstructed hours be established in a

reasonable and accurate manner. *Williamsburg Fair Housing Committee v. Ross-Rodney Housing Corp.*, 599 F.Supp. 509, 517 (S.D.N.Y.1984).

the litigation. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Second, the Court multiplies that amount by a reasonable hourly rate which is presumed to be the market rate for the services provided. *Blum,* 465 U.S. at 895–96 n. 11, 104 S.Ct. at 1547 n. 11. Plaintiff bears the burden of proving that the rates requested are indeed the reasonable market value rates. *Id.* The figure achieved by multiplying the hourly rate by the number of hours is generally known as the lodestar. *Williamsburg Fair Housing Committee v. Ross-Rodney Housing Corp.,* 599 F.Supp. 509, 513 (S.D.N.Y.1984).

### A. *Establishing Number of Hours*

The first step in the lodestar determination is to ascertain the number of hours reasonably spent on the litigation. *Veterans,* 675 F.2d at 1323. This amount will not necessarily equal the number of hours actually spent. *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980). The Court must scrutinize the hours claimed to distinguish "raw [unbillable]" time from "billable" time. *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983). This distinction must be made because time not properly billable to a client cannot be billed to an adversary. *Copeland,* 641 F.2d at 891. The Court must be alert to possible duplication of services or unfair billing. *Ramos,* 713 F.2d at 553–54. Moreover, in ascertaining the reasonableness of the fee application, the Court must rely on its own "knowledge,

experience and expertise [to approximate] the time required to complete [the] activities." *Johnson v. Georgia Highway Express Inc.,* 488 F.2d 714, 717 (5th Cir.1974).

Plaintiffs' counsel have submitted to the Court the following items supporting their fee application: affidavits and records documenting the work of attorneys Thomas A. Harnett, Howard Schell Reilly, Roger C. Rosenthal and Claudia A. Smith; a statement of costs; three affidavits concerning the appropriate hourly rate to be used; and a memorandum of law and reply memorandum of law in support of the motion for fees and costs. The total hours claimed are:[2]

| | |
|---|---|
| Harnett | 321.50 |
| Reilly | 1074.20 |
| Rosenthal | 60.75 |
| Smith | 101.75 |

In order to evaluate the reasonableness of the hours claimed for the various services, the figures will be grouped into the following categories: (A) involvement in the administrative proceedings, (B) conferences and meetings with cocounsel, (C) research and writing, (D) general preparation (filing complaints, reviewing and photocopying documents, making calculations, travel, telephone calls).

| Claimant[3] | (A) | (B) | (C) | (D) |
|---|---|---|---|---|
| Harnett | 18.50 | 25.50 | 138.50 | 139.00 |
| Reilly | 136.75 | 13.00 | 357.75 | 566.70 |
| Rosenthal | 60.75 | — | — | — |
| Smith | — | 5.75 | 72.75 | 23.25 |
| TOTAL | 216.00 | 44.25 | 569.00 | 728.95 |

Defendants' objections are contained in a memorandum of law in opposition to the application for fees and an affidavit with supporting materials.[4] The objections are

---

2. The Court notes that plaintiffs have shaved 271.50 hours from their fee application for time expended on unsuccessful claims. See affidavits of Harnett and Reilly.

3. The chart is the result of the Court's best efforts at approximation. Exactness could not be achieved due to the frequent mixing of categories in plaintiffs' entries.

4. Defendants have also submitted affidavits supporting their opposition to the rates requested by plaintiffs. See note 17.

numerous, and can essentially be grouped into two broad categories: [5] (1) objections to compensation for the administrative proceedings, and (2) claims regarding the accuracy of plaintiffs' time records. The Court will discuss defendants' objections below.

B. *Objections to Compensation for Administrative Proceedings*

■ Defendants argue that the FLSA does not authorize compensation for plaintiffs' work in the administrative proceedings. The FLSA provides in pertinent part: "The Court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (Supp. 1986). Defendants contend that because the statute does not state "action or proceedings," no money can be allowed for proceedings.

Initially, the Court notes that the FLSA, which is plainly a remedial statute, should be construed broadly. *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296, 105 S.Ct. 1953, 1959, 85 L.Ed.2d 278 (1985). The Court is cognizant of the goal of the FLSA to protect the health and well being of employees covered by its provisions. *See* 29 U.S.C. § 202 (1978). Therefore, this Court will heed the Supreme Court's admonition against construing the statute "in a narrow, grudging manner." *Tennessee Coal Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944).

This Court will allow compensation for the administrative proceedings. In holding that the Clean Air Act allowed an award for administrative proceedings, the Supreme Court stated that although the word "proceeding" is not mentioned in the statute, "this distinction is not a sufficient indication that Congress intended for § 304 to apply only to judicial, and not administrative, proceedings." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. ——, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986). In reaching this determination, the Court relied on the similar goals of the Civil Rights Act and the Clean Air Act to foster private enforcement of the statutes. *Id.* The Court held that since the Clean Air Act authorized a Court to award attorneys' fees and allowed private citizens to bring an action to enforce the Act, Congress intended to encourage citizen enforcement. *Id.* Consequently, the Court stated, there was "no reason not to interpret both provisions governing attorneys' fees in the same manner." *Id.* 106 S.Ct. at 3096.

Similarly, Congress sought to promote citizen enforcement of the FLSA. "[The] Fair Labor Standards Act of 1938 and Title VII of the Civil Rights Act of 1964 authorize district courts to award a reasonable attorneys fee to prevailing civil rights litigants. The purpose of such provisions is to encourage private litigants to act as 'private attorneys general' on behalf of enforcement of the civil rights laws." *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 11 (D.C.Cir.1984), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985).

Therefore, this Court finds no rationale to interpret the attorney's fees provision of the FLSA and the Civil Rights Act differently. The lack of the word "proceeding" in the FLSA does not prohibit this Court from awarding compensation for the administrative proceedings.

Moreover, in addition to the FLSA's policy of encouraging private rights of action, the Court notes that its provision for the award of attorney's fees is not *permissive* [6] but *mandatory.*[7] Therefore, it strongly appears that Congress intended to encourage private citizen enforcement of the FLSA.

Defendants urge the Court to consider the decision in *Kennedy v. Whitehurst*, 690

---

5. Defendants also object to the hourly rates requested and the proposed lodestar enhancement. These concerns will be addressed below.

6. The statute provides in relevant part: "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. 42 U.S.C. § 1988.

7. *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 415 n. 5, 98 S.Ct. 694, 697 n. 5, 54 L.Ed.2d 648 (1978).

F.2d 951 (D.C.Cir.1982).[8] In *Kennedy* the Court of Appeals reviewed a district court ruling that the Age Discrimination in Employment Act (ADEA), which incorporates the attorneys' fees provision of the FLSA through 29 U.S.C. § 626(b), does not authorize attorneys' fees to either federal or private sector employees for work performed in administrative proceedings. Although the Court of Appeals upheld the district court's ruling as to federal employees, it specifically stated, "we do not today express a view on the availability of fee awards to *private* sector employees for legal services performed under the ADEA at the administrative level." *Kennedy*, 690 F.2d at 966 (emphasis in original). In addition, the Court narrowly limited its holding to disallowing attorneys' fees to federal workers who attain relief only through administrative proceedings. *Id.* More importantly, the court in *Kennedy* specifically stated that, "we do not hold that federal ADEA claimants have no entitlement to a fee award for the services of counsel rendered in connection with *judicial* actions." *Id.* (emphasis in original). In fact, it has been held that when federal litigation is instituted to complement administrative proceedings, the fees incurred in the proceedings are compensable. *Bleakley v. Jekyll Island-State Park Authority*, 536 F.Supp. 236, 243 (S.D.Ga.1982).

In the case at bar, the proceedings were connected with judicial action. This Court stayed the action pending proceedings to "settle a threshold question in the litigation." [9] The work performed by plaintiffs in connection with the Court directed action is therefore allowable. An award for ad-

ministrative proceedings critical to a party's rights is allowable and "entirely proper and well within the 'zone of discretion' afforded the District Court." *Delaware Valley*, 478 U.S. at ——, 106 S.Ct. at 3096.

Defendants claim that if the Court allows an award for the administrative proceedings, the Court should reduce the claim by 90%. Defendants' Memorandum at 15. Defendants allege that 90% of the time spent on the proceedings was unnecessary. This Court has taken into account the massive record amassed in the proceedings.[10] In fact, this Court specifically noted that "[b]ased on the record before the Administrator, the plaintiffs are entitled to judgment as a matter of law." [11] Consequently, defendants' request that the hours in the proceedings be reduced by 90% is rejected by the Court.

**C.** *Claims Regarding the Sufficiency of Plaintiffs' Time Records*

Defendants argue that the time records submitted by plaintiffs are inadequate to document their claims. Defendants' Memorandum at 22. Although plaintiffs' time records are generally satisfactory, some entries do fail to comply with the standards in *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir.1983) [hereinafter cited as *NYSARC*]. The "records should specify, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* at 1148. This Court has carefully examined the time entries and finds that an overall reduction in hours is warranted. The Court will now discuss some of these unusual time claims.

---

**8.** Defendants also cite the Court to *Koyen v. Consolidated Edison Co. of New York, Inc.*, 560 F.Supp. 1161 (S.D.N.Y.1983). There the court held that attorneys' fees for administrative services were not compensable under the Age Discrimination in Employment Act ("ADEA"). *Koyen*, 560 F.Supp. at 1170. However, in the case at bar, the administrative services for which compensation is sought were performed in connection with judicial action. *See DeFries v. Haarhues*, 488 F.Supp. 1037 (C.D.Ill.1980). Moreover, *Koyen* relies heavily on *Kennedy*. However, as discussed below, *Kennedy* does not

hold that private sector employees are prohibited from being awarded fees for administrative proceedings.

**9.** *Soler v. G & U, Inc.*, 477 F.Supp. 102, 105 (S.D.N.Y.1979).

**10.** *Soler v. G & U, Inc.*, 615 F.Supp. 736, 739 n. 4 (S.D.N.Y.1985).

**11.** *Id.* at 740.

#### (1) Attorney Claudia A. Smith

| Hours | Entry |
|-------|-------|
| 2 | Call to District Court Cashier |
| 2 | Outline |
| 2.75 | writing with Howard Reilly |
| 5 | writing, research |

Such entries only vaguely describe the claimed activities. The Court must be informed of the purpose of the various services claimed in order to evaluate their reasonableness. It is impossible to judge the reasonableness of spending two hours on an outline, or five hours on writing and research if the topic of the work is not disclosed. Smith's hours will be reduced by 15%.

#### (2) Attorney Roger C. Rosenthal

| Hours | Entry |
|-------|-------|
| 12.0 | Assistance with 3(m) hearing and travel to and from hearing |

All of Rosenthal's claims are either for "Assistance with 3(m) hearing" or "Assistance with 3(m) hearing [and] travel to [and] from hearing." By commingling time spent traveling with time spent assisting at the hearing, such entries impede the Court's efforts to evaluate the reasonableness of "travel time". Rosenthal's hours will therefore be reduced by 20%.

#### (3) Attorney Howard Schell Reilly

| Hours | Entry |
|-------|-------|
| 8.0 | Trip to White Plains to work on payroll |

This type of entry does not provide the Court with sufficient information to justify its total inclusion in the hours allowed. In addition, Reilly seeks compensation for a miniscule amount of time spent working on claims against Peat Gro Farms. However, Peat Gro Farms is not a defendant in this action, so compensation will not be awarded for such time. It is noted, however, that Reilly's entries are generally quite adequate and enable the Court to reach a determination on the reasonableness of the hours. Reilly's hours will be reduced by 5%.

#### (4) Attorney Thomas A. Harnett

| Hours | Entry |
|-------|-------|
| 4 | Same, research |
| 4 | Travel & research |
| 10.25 | Research |
| 4 | Fee Application |

Entries such as these do not provide the Court with adequate information, since the purpose of the research is not disclosed. Additional details would also aid the Court in evaluating the reasonableness of spending four hours on the fee application. The Court also notes that the 5 hour claim for June 4, 1984, styled "travel and conference," appears twice on his application. Consequently, Harnett's hours are reduced by 15%.

**Allowed Hours After Reduction**

| | Allowed | Requested | Percent Reduction |
|---|---------|-----------|-------------------|
| Harnett | 273.28 | 321.50 | 15 |
| Reilly | 1020.49 | 1074.20 | 5 |
| Rosenthal | 48.60 | 60.75 | 20 |
| Smith | 86.49 | 101.75 | 15 |
| Total | 1428.86 | 1558.20 | |

The Court has carefully examined defendants' numerous other allegations. These include the arguments that plaintiffs' counsel duplicated services, and that many tasks should have been performed by non-lawyers. Defendants' Memorandum at 24.

■ In terms of multiple counsel, although defendants allege this led to wasted effort, defendants have not shown that such duplication existed. Even if defendants proved duplication occurred, they would have to show that such representation was unreasonable. Clearly, defendants should not be compelled to pay for attorneys' fees originating from unnecessary or duplicative time spent. *Ramos*, 713 F.2d at 554. However, employing multiple counsel is not unreasonable per se. *Williamsburg*, 599 F.Supp. at 518; *NYS-ARC*, 711 F.2d at 1146.

■ Turning to defendants' argument that many work assignments could potentially have been allocated to non-lawyers, this Court does not agree. It is not necessarily unreasonable for counsel to perform certain tasks such as calculating or compiling of exhibits. On the contrary, in some cases it may avoid duplicative time. Plaintiffs' counsel state that their calculations involved substantial effort. Plaintiffs' Reply Memorandum at 13. If the tasks had

originally been assigned to non-lawyers, counsel might have been forced to repeat the work.[12]

In sum, this Court finds that plaintiffs' use of counsel in various activities was fair and reasonable. Defendants have presented the Court with conclusory allegations but no evidence of unreasonableness. Moreover, the Court is confident that any unreasonable duplication in the hours claimed will be offset by reductions in the billable hours allowed. Finally, the Court takes into account that plaintiffs have already made a reduction of 271.5 hours in the total for which they seek compensation.

### D. *Establishing an Hourly Rate*

■ The reasonable hourly rate of compensation is generally the "prevailing market [rate] in the relevant community." *Blum,* 465 U.S. at 895, 104 S.Ct. at 1547. The market rate is the rate which is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 895–96 n. 11, 104 S.Ct. at 1547 n. 11.

The burden is on the award applicant to show the reasonableness of the hourly rates requested. *Veterans,* 675 F.2d at 1325. Three types of evidence can satisfy this requirement: (i) evidence showing the actual billing practice of plaintiffs; (ii) evidence of recent fee awards in similar cases; and (iii) affidavits indicating what other counsel in similar cases received. *Veter-*

*ans,* 675 F.2d at 1325–26. After the plaintiffs submit evidence supporting their rate request, the burden shifts to defendants to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Id.* at 1326.

Plaintiffs have requested the following hourly rates:

| | |
|---|---|
| Harnett | $120 |
| Reilly | 140 |
| Rosenthal | 130 |
| Smith | 60 |

Plaintiffs have submitted three affidavits from local counsel.[13] One affidavit, sworn to by Richard Greenblatt and notarized by Harnett, states that his fee for federal litigation is $150 per hour.[14] The affiant does not disclose the federal districts in which he practices.[15] Plaintiffs' Exhibit F. Another affidavit sworn to by William E. Crain claims that the usual fee he charges for federal litigation is $125 per hour. It is not notarized. Plaintiffs' Exhibit G. The third affidavit, sworn to by Paul T. Kellar, says he has practiced before the Northern District of New York and that in his opinion the fee in this case should be $125 per hour. The affiant fails to disclose the rate which he actually charges for litigation. Moreover, the affiant does not disclose the factual basis for his opinion. Plaintiffs' Exhibit H.

The defendants' objections to these affidavits clearly have merit.[16] Plaintiffs

---

**12.** Moreover, even if defendants' allegations were proved, the Court would not necessarily adjust its approach. The allocation of duties in a law firm is not uniform. Consequently, "[a]bsent a clear misallocation of resources, this Court is unwilling to second-guess counsel's judgment." *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 366 (D.D.C.1983), *quoting Connors v. Drivers, Chauffeurs & Helpers Local Union 639,* No. 82–1840, slip op. at 15 (D.D.C. March 4, 1983).

**13.** In addition, Rosenthal's affidavit states that "the customary fee for litigation of this kind in the District of Columbia is $140 per hour." The applicable rates for the proceedings are contested by defendants. See note 17.

**14.** The Court notes that the affidavit is notarized by Harnett. Affidavits from friendly attorneys stating conclusory rates are insufficient. *Veterans,* 675 F.2d at 1325.

**15.** The Court needs to know more facts from the affiant. For example, the court would prefer to know in which court he charges $150 per hour. If the court is far from his firm, the fee might include a hefty travel charge.

**16.** Defendants also argue that the time spent traveling should not be compensated at the same rate as other work. This Court does not accept that argument. "When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling. That is why lawyers invariably charge their clients for travel time, and usually at the same rate...." *Henry v. Webermeier,* 738 F.2d 188, 194 (7th Cir.1984). However, in this case the Court recognizes that much of the travel time was utilized to reach a worksite where plaintiffs worked on calculations. The time claimed for "nonlegal work—e.g., filing information, com-

should have submitted affidavits from local counsel containing greater detail.[17] For the Court to make a proper determination, the affidavits should state "whether the rate is for a specific type of litigation or for litigation in general, and whether the rate is an average one or one specifically for an attorney with a particular type of experience or qualifications." *Veterans*, 675 F.2d at 1325. Moreover, "[t]he affidavit should also state the factual basis for the affiant's opinion. The best evidence would be the hourly rate customarily charged by the affiant himself or by his law firm. Alternatively, the affidavit might state that the stated rate is based on the affiant's personal knowledge about specific rates charged by other lawyers or rates for similar litigation." *Id.* at 1325–26. Judged by this standard, the affidavits submitted by the plaintiffs do not adequately establish a reasonable hourly rate. Consequently, the Court must interject its knowledge and expertise in place of evidence that plaintiffs could have provided.

■ To ascertain a reasonable hourly rate, the Court will employ the factors cited in *Johnson, supra*, 488 F.2d at 717–19. The Court must look at the size of the award counsel won on behalf of its clients, the undesirability of the case, the opportunity costs in litigating the claim, and the time limitations imposed by the case. *Id.* at 718–19.[18] The Court notes that plaintiffs seek $260,000.00 although they obtained $110,705.00 for their clients. Also, despite their contentions to the contrary, there is no evidence indicating that this case was unpopular. Plaintiffs have not shown that they have encountered bad publicity or have been the target of unfavorable news articles. Moreover, the Court has not been offered any evidence that plaintiffs lost potential clients as a result of the litigation. Furthermore, the Court takes into account that no time limitations were imposed by plaintiffs' clients or the Court.

Finally, the Court must solve the dilemma which protracted litigation imposes. The Court realizes that, "[n]either historic nor current rates are ideal." *NYSARC*, 711 F.2d at 1152. The Second Circuit is "reluctant to impose upon district courts an added burden of ascertaining precise year-by-year figures in every case." *Id.* at 1153. Therefore, in a lengthy case such as the one at bar, "it will be sufficient to divide the litigation into just two phases and use one rate for the early phase and a current rate for the later phase." *Id.*

The Court notes plaintiffs have not submitted any evidence of their rent costs or overhead. Moreover, plaintiffs are non-profit lawyers and "an award to non-profit lawyers based upon billing rates charged by profit-making lawyers inevitably produces a windfall." *Id.* at 1150.

In 1980, a major New York City law firm used an average billing rate of $85 per hour for its associates. *Id.* at 1152. That benchmark rate was used by this circuit to find a district court award to non-profit lawyers of rates between $70 and $140 per hour for 1980 too high. *Id.* at 1150. Plain-

---

puting statistics, etc.—is not properly compensable at attorney's rates, merely because an attorney may have performed it." *Ruiz v. Estelle*, 553 F.Supp. 567, 588 (S.D.Tex.1982). In addition, plaintiffs' time entries often commingle travel time and work on calculations thereby preventing this Court from separating the two. However, the Court is confident that the reductions already made in the number of hours will prevent the defendants from unreasonably paying an attorney's fee rate for non-legal work.

**17.** Defendants have submitted the following affidavits which the Court finds to be more beneficial than the plaintiffs' submissions:

(A) Affidavit sworn to by John J. McManus, Jr. states the affiant charged defendants $60–70 per hour during the administrative proceedings in years 1979 through 1981. The affiant charged $70–90 per hour for the litigation from 1981 through 1985.

(B) Affidavit sworn to by John Meehan informs the Court that affiant's fee during the proceedings was $75–100 per hour for the years 1980 through 1981.

(C) Affidavit sworn to by Michael R. Gottlieb informs the Court that the affiant's billing charge for this type of litigation during the years 1979 through 1985 was $100–125 per hour.

**18.** Other *Johnson* factors the Court considers are: (i) length of the professional relationship between counsel and client; (ii) experience and reputation of counsel; (iii) awards in similar cases; and (iv) time involved in the litigation. *Johnson*, 488 F.2d at 717–19.

tiffs' affidavits are from individuals in private profit making law firms. Consequently, they are of lesser probative value than affidavits from non-profit law firms in the community.

The Court will use one set of rates for the years 1978–1982. Another set of rates will be utilized for the years 1983–1986, reflecting a higher price index, and a general increase in legal fees.

|  | 1978–1982 | 1983–1986 |
|---|---|---|
| Harnett | $75 | $ 90 |
| Reilly | 80 | 100 |
| Rosenthal | 70 | — |
| Smith | — | 30[19] |

The lodestar award is as follows:

| | 1978–1982 | | | |
|---|---|---|---|---|
| | Hours | X | Rate | Award |
| Harnett | 69.06 | | $75 | $ 5,179.50 |
| Reilly | 724.38 | | 80 | 57,950.40 |
| Rosenthal | 48.60 | | 70 | 3,402.00 |
| Smith | — | | — | — |
| Subtotal | | | | $66,531.90 |

| | 1983–1986 | | |
|---|---|---|---|
| Harnett | 199.96 | 90 | $17,996.40 |
| Reilly | 296.11 | 100 | 29,611.00 |
| Rosenthal | — | — | — |
| Smith | 86.48 | 30 | 2,594.40 |
| Subtotal | | | $50,201.80 |
| Grand Total | | | $116,733.70 |

### 2. *Lodestar Enhancement*

■ Plaintiffs seek a lodestar enhancement of 25%, basing their claim on assertions of "exceptional results" and the "novel questions of law" involved in the litigation.[20] Defendants object to an upward adjustment of the award.

An alteration in the lodestar amount is "an attempt to calculate more precisely the market value of the services provided by the attorney." *Alabama Power Co. v. Gorsuch*, 672 F.2d 1, 6 n. 28 (D.C.Cir.1982). The plaintiff carries the burden of justifying any deviation from the lodestar. *Veterans*, 675 F.2d at 1328.

First, the Court will examine the actual fee arrangement entered into between plaintiffs' counsel and their clients. If the agreement provides that counsel will receive a percentage of a potential damage award, that is a powerful consideration weighing against an upward revision. *Lewis v. Coughlin*, 801 F.2d 570, 576 (2d Cir.1986). In the case at bar, there was no fee arrangement at all.

However, this is not a dispositive factor in reaching a conclusion. "In and of itself, contingency is not a sufficient basis for awarding a lodestar bonus." *Lewis*, 801 F.2d at 575. Therefore, even if plaintiffs accepted the case on a totally contingent basis, the inquiry is not at an end. The Court must go on to examine the pre-trial probability of failure. *Id.* This inquiry should be an objective one, not a subjective one. *Id.* "A significant risk of not prevailing coupled with a contingent fee arrangement may be sufficient to merit the upward adjustment." *Id.* at 576. In the case at bar, plaintiffs have failed to show a low probability of prevailing. Plaintiffs have not submitted any evidence to this Court that other counsel rejected the case because of the low probability of winning statutory renumeration. *Id.* Furthermore, plaintiffs have not presented any evidence that an objective pre-trial evaluation of the case would have indicated low chances of success. In fact, it strongly appears that such an evaluation would have resulted in a prediction of success in the litigation.

Plaintiffs argue that a hike in the lodestar is warranted because the issues involved in the litigation were complex and novel. Plaintiffs' Memorandum at 24. The Court rejects that contention because "[c]omplexity, of course, no longer justifies a bonus." *Lewis*, 801 F.2d at 576.

Plaintiffs also voice their opinion that not awarding the bonus would "grossly undercompensate" them. Plaintiffs' Reply Memorandum at 17. However, there is "[a] strong presumption that the lodestar figure—the product of reasonable hours times

---

**19.** The Court notes that during the time Smith is claiming hours, she was not yet admitted to the bar.

**20.** Plaintiffs' Reply Memorandum of Law at 16, 17.

a reasonable rate—represents a 'reasonable' fee...." *Delaware Valley,* 478 U.S. at ——, 106 S.Ct. at 3098. Plaintiffs also contend that they achieved "exceptional results." This argument is unconvincing since "it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance." *Delaware Valley,* 478 U.S. at ——, 106 S.Ct. at 3098–99. Therefore, the Court concludes that plaintiffs' lodestar award should not be revised upward.

### 3. *Costs*

In addition to the lodestar, plaintiffs seek $7,098.57 in costs. Many of these costs were incurred in connection with the administrative proceeding. The rest of the costs are directly related to the actual litigation. The Court finds that the costs are reasonable and should be added to the lodestar award.

### CONCLUSION

For the reasons set forth above, the Court awards $123,832.27 to plaintiffs. The Court finds that plaintiffs should be compensated for 1424.59 hours of work valued at $116,733.70 but that no upward alteration in the lodestar is justified. Finally, the Court adds $7,098.57 in costs to the award. Defendants are ordered to pay a total of $123,832.27 to plaintiffs.

So ordered.