**Kathleen L. JACKSON, Plaintiff,**

**v.**

**Gilbert CASSELLAS, in his capacity as Chairman, Equal Employment Opportunity Commission, Defendant.**

No. 88–CV–654C.

United States District Court, W.D. New York.

Feb. 26, 1997.

As Amended April 9, 1997.

---

Gross, Shuman, Brizdle & Gilfillan (Leslie Mark Greenbaum, of counsel), Buffalo, NY and William A. Price, Buffalo, NY, for Plaintiff.

Patrick H. NeMoyer, United States Attorney (Mary K. Roach, Assistant United States Attorney, of counsel), Buffalo, NY, for Defendant.

## BACKGROUND

CURTIN, District Judge.

In this sex discrimination case, plaintiff's attorney, William A. Price, Esq., prevailed. After seven years of bruising discovery and difficult motions, he was able to recover at settlement, without trial, all possible damages with the exception of front pay, which was potentially available under the statute.

Through settlement, plaintiff received a cash payment of $138,690.00, plus interest and reimbursement for private medical insurance payments. She received a pension benefit increase from $648.00 per month to about $1,433.00 per month, and her medical premium was reduced by at least $149.00 per month. Because of plaintiff's alternate employment earnings, there was mitigation to the defendant in the amount of approximately $127,000.00 for backpay damages.

Pursuant to 42 U.S.C. § 2000e–5(k), the Age Discrimination in Employment Act, 29 U.S.C. §§ 626(b) and 633(a), plaintiff moves for an award of attorney fees and expenses in connection with his efforts in this case. Unfortunately, in spite of strenuous efforts by United States Magistrate Judge Leslie G. Foschio and the court to settle, the fee application has turned into a second round of litigation. Plaintiff has filed five affidavits, a number of exhibits, and three memoranda in support of his claim, and defendant has filed three affidavits and two memoranda in response.

Defendant objects to the fee application on the ground that the hourly rate claimed by Mr. Price is excessive, that the application is not supported by contemporaneous records, that the description of the work done is not specific enough to enable the court or defense counsel to determine what plaintiff's attorney did during the course of preparation, that the hours claimed for some portion of the work is excessive, and that plaintiff's attorney claimed an attorney rate for purely ministerial tasks. *See* Item 117.

In his first affidavit in support of the fee application, Mr. Price has set forth what he describes as "Statement of Itemized Services," Item 115, Ex. B, which is a day-by-day accounting of his activities in this case with the hours expended for each activity. The total time calculated amounts to 1,699.10 hours. Attached to his affidavit Mr. Price also set forth in Exhibit C two attorney fee computations, utilizing different hourly rates. These computations recognize that there has been a substantial delay in the payment between the time that the services were rendered until the time of the application.

The first Exhibit C computation is based upon an hourly rate of $175, the average historic market rate. The second computation is based upon $200 per hour, which represents the minimum current average market rate applicable for attorneys like Mr. Price who have specialized experience and success in this field in this district. In a subsequent affidavit, Mr. Price's lawyer sets out a number of variations on these rates. One variation is based on a calculation of actual historic rates charged by Mr. Price

through 1991, and a $200 per hour rate after 1991. Item 126, ¶¶ 12–19. The Civil Rights Act was amended in 1991 to allow prevailing parties to charge the federal government interest on unpaid legal fees. 42 U.S.C. § 2000e–16(d) (effective November 21, 1991). Mr. Price asserts that under the circumstances, including delay in payment and the difficulty of the case, the $200 per hour rate is the minimum rate which should fairly and reasonably be applied to all hours.

If the $175 per hour rate is accepted, the total attorney fee computation would be $297,342.50. If the combined historic market rate/$200 per hour fee is applied, the total attorney fee computation would be $306,743.00. If the $200 per hour rate is accepted, the total attorney fee computation would amount to $339,820.00. Mr. Price also claims expenses and disbursements in the amount of $14,785.77, and that amount is not disputed by the defendant. Mr. Price also requests reasonable attorney fees and expenses for the time expended to complete this application, but to date no affidavit has been supplied to the court setting forth this calculation. Item 115.

## DISCUSSION

### I. Lodestar calculation

In this circuit, the starting point of every fee award is a calculation of the of the attorney's services in terms of the time expended on the case. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir.1974). To calculate the lodestar amount, the court multiplies the number of hours reasonably expended by a reasonable hourly rate to establish the fee award. *Id.* at 470–71. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

### A. Objections to Mr. Price's records

A fee application must be supported by contemporaneous time records which describe with specificity the work done. *New York Ass'n. for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). The "burden is on counsel to keep and present records from which the court may determine the nature of the work done,

the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987).

### 1. Were plaintiff's records made contemporaneously?

"The rule in this Circuit prohibits the submission of *reconstructed* records, where no contemporaneous records have been kept." *Lenihan v. City of New York,* 640 F.Supp. 822, 824 (S.D.N.Y.1986) (emphasis in original). A party may, however, submit typewritten transcriptions of contemporaneous records. *Id.* In addition, a party may offer explanations of contemporaneous records, based on personal knowledge. *U.S. Football League v. National Football League,* 704 F.Supp. 474, 477 (S.D.N.Y.1989).

As noted, plaintiff has submitted to the court a "Statement of Itemized Services" detailing the hours spent on the case. Items 115, Ex. B, and 134, Ex. B. Plaintiff's counsel avers that the statement was prepared directly from plaintiff's own handwritten entries in a daily log of activities. However, the manner in which Mr. Price kept his time records is unusual, since in one log or diary record he kept daily handwritten records not only for this case, but also for other cases, and his own personal and business activities. Therefore, to prepare Exhibit B, he had to review his log and cull out matters which did not apply. Mr. Price has submitted a handwritten, redacted copy of his entries pertaining to this case for the year 1991, but not for other years. Therefore, the defense has been able to compare handwritten entries for 1991 with his typed compilations contained in Exhibit B, but has not been able to make a similar comparison for other years. Plaintiff has refused to present a redacted version of the entire log, claiming that such an exercise would be "mindless busy work, would take up a great deal of time, and would be unnecessary to the fee claim." Item 134.

Defendant argues that plaintiff's fee application should be denied because Mr. Price has not produced original, contemporaneous

time records. Defendant has refused to examine the unredacted records under a condition that it enter into a confidentiality agreement regarding the unrelated information in Mr. Price's diary. The government says that it "cannot and will not enter into an open-ended agreement which might jeopardize the defense of future cases." Item 137 at 3.

In considering this application, the court will take into account that through the years it has had numerous contacts with Mr. Price in other litigation. Mr. Price has always been trustworthy and accurate in every presentation made to the court. However, the court cannot ignore the fact that because of the manner in which he kept his records, defense counsel and the court have been denied the ability to fairly review his calculations. The court will also consider that a good portion of the work accomplished in this case was completed in 1991, which is the year in which he has presented a copy of his redacted entry (Item 134, Ex. O). The court is also familiar with the work done in this case during 1991, because supervision of discovery was not referred to United States Magistrate Judge Leslie G. Foschio until February 10, 1992 (Item 58). Therefore, the court is familiar with the course of litigation during that period.

It is also apparent that after that time, the motions handled by the Magistrate Judge were important and difficult and required close attention of plaintiff's attorney. Further, an item-by-item comparison of the log entries in the "statement of itemized services" as described in paragraphs 16–18 in Exhibit R of Item 134 demonstrates that the statement of itemized services for that period sufficiently summarizes the hours expended and services performed. The discrepancies in the 1991 account are minor. Unfortunately, after considering all of the circumstances, the court must make a reduction in the fee application.

### 2. The court must also make a reduction for vagueness

■ The Supreme Court has observed that "counsel, of course, is not required to record in great detail how each minute of his time was expended[,] but at least counsel should identify the general subject matter of his time expenditures." *Hensley v. Eckerhart,* 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12 (1983).

The defense does not argue that there was not substantial work on the case. Rather, the defense claims that it is impossible to determine what activities Mr. Price participated in from his statement of itemized services, and that the fee should be adjusted accordingly.

A sample of the entries of which defense complains include:

| Date | Entry | Hours |
| --- | --- | --- |
| 01–27–92 | Meet w/ James | .25 |
| | TC:GG (2) Message | .40 |
| | Various Jackson tasks | .75 |
| | TC:Depalo/KJ | .35 |
| 01–27–92 | Various Jackson tasks | .75 |
| 01–30–92 | TC:Mary Martin Mercato | |
| 01–31–92 | TC:Larie (re fax) for (Swick) message | .25 |
| 02–15–92 | Work on afternotes | |
| 05–08–92 | Continue review 5/7 doc prod | .75 |

Telephone conferences are noted simply as "TC:KJ," or "TC:SB." There is no explanation as to why discussions were necessary, or the general topic of the conversation. The defense points out that Mr. Price made over 500 telephone calls, all with similar description. In addition, the defense notes that between December 1990 and January 1991, Mr. Price spent over 50 hours "reviewing plaintiff's caseload for October 1987 to February, 1988."

Plaintiff responds that if these entries are read in context with what was transpiring at

the time, the entry becomes understandable. In Item 118, pages 5–9, ¶¶ 14–27, defense lists a number of items from plaintiff's statement which it claims are either ministerial or for which the explanations of vague. These include statements like:

| Date | Entry |
| --- | --- |
| 11–13–91 | Various tasks re: document review |
| 01–03–92 | Various KJ tasks |

Similar entries are listed in Item 118.

In response, Mr. Price filed his affidavit (Item 125). *See, especially,* paragraphs 43–49. He asserts that it was necessary for him as attorney personally to review over 8,000 documents. That work could not be adequately done by a paralegal, and the court finds that that is a reasonable position. The court concludes after a review of defense objections and Mr. Price's explanatory remarks that in context, the explanations offered by him make sense and support his application. The court finds support in the record for his comment that "the greatest problem in this case was the fragmented and disorganized document production by the EEOC. Between November 1991 and June 1992, defendant produced twenty-four (24) separate document packages, often involving incomplete and/or duplicative responses. See *supra.* ¶ 34(e)." Item 125, ¶ 44.

It was necessary for Mr. Price to review many files which contained a record of plaintiff's work in the EEOC office, and to compare her work with that of other employees of the office set forth in other files. The 50 hours expended for this work is reasonable.

Courts in this circuit have made decreases for vagueness and for failure to keep contemporaneous records from fifteen to thirty percent. *See Kirsch v. Fleet Street Ltd.,* 1996 WL 695687 (S.D.N.Y.1996) (twenty percent reduction of lodestar for vague and redundant records); *Cooley v. Arena,* 1996 WL 494983 (N.D.N.Y.) ("Given the lack of contemporaneous time records, in combination with many descriptions of services rendered which are vague and overbroad, in this particular case it is appropriate to reduce by thirty percent (30%) the total number of hours which attorney Ferris claims to have rendered legal services in this case.") *Nu–Life Construction Corp. v. Board of Education of City of New York,* 795 F.Supp. 602, 607 (E.D.N.Y.1992) (30% reduction due to vague entries); *Soler v. G & U. Inc.,* 658 F.Supp. 1093, 1098–99 (S.D.N.Y.1987) (fee award reduced by 15% where vague entries did not provide the court with adequate information); *Orshan v. Macchiarola,* 629 F.Supp. 1014, 1019 (E.D.N.Y.1986) (entries that state "prepare correspondence" or "review correspondence" are insufficient); *United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir.1989) (listing cases where the lodestar was reduced between 25 and 30% for vagueness), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990); *Ragin v. Harry Macklowe Real Estate,* 870 F.Supp. 510 (S.D.N.Y. 1994) (30% reduction for failure to keep contemporaneous records). In *Johnson v. Kay,* 742 F.Supp. 822, 836–37 (S.D.N.Y.1990), reconstructed time records were accepted, but the award was reduced by 20 percent.

In most of the cases in which the reduction approaches thirty percent, the records contained redundancies, unexplained deletions or additions, or inconsistencies. In the present case, while the court is faced with a relatively small number of vague entries, and the failure to present contemporaneous records which can be reviewed, almost all of these records can be explained through a study of the history of the case as it was going forward. A suggested sample record is contained in EMPLOYEE RIGHTS LITIGATION, PLEADING & PRACTICE, (Jane Goodman, ed., Matthew Bender 1995). Item 134, Ex. P. Considering vagueness only, this comparison is largely favorable to the plaintiff. The sample records do not contain significantly more detailed notations of the subject matter of telephone conversations, or the specific activities undertaken, than are presented in Mr. Price's statement. Taken as a whole, however, there are a number of entries on the plaintiff's statement which are so vague

that it is quite difficult to tell what he is doing at the time. These deficiencies are much less significant than those discussed in cases where thirty percent reductions were made, and are marginally less significant than those cases where fifteen percent reductions were made. *See e.g. Soler v. G & U. Inc.,* 658 F.Supp. 1093, 1098–99 (S.D.N.Y. 1987); *Walker v. Coughlin,* 909 F.Supp. 872 (W.D.N.Y.1995) (Larimer, J.).

Plaintiff does not persuasively compare the specificity of his records to the records approved by this court in *United States v. City of Buffalo,* 770 F.Supp. 108 (W.D.N.Y.1991). In that case, the court was not presented with the specificity of attorney's records as an objection to the fee calculation, and the case is consequently inapposite.

As to the problem of the presentation of contemporaneous records, plaintiff's failure is balanced by the complexity of document review which plaintiff's attorney undertook, the reluctant and confusing manner in which defense made documents available, the excellent result obtained by Mr. Price, and his reputation for integrity and his history of fair dealings with the court. The court has already cited a number of cases in which the handwritten and computer records were not presented to the court, but typewritten copies of these records were, and the court found that this presentation with an attorney's affidavit was sufficient.

Taking all of this into account, the court will decrease the award by 15 percent for vagueness and for failure to make available for review contemporaneous records for the years other than 1991.

### B. Other objections

■ The court dismisses defendant's remaining objections that plaintiff's attorney claimed an attorney rate for purely ministerial tasks and an inordinate amount of time for telephone conferences. The court finds that Mr. Price used a reasonable amount of time to complete the necessary work of this case. As to the objection to ministerial tasks, the court finds that as a sole practitioner, it would have been inefficient for Mr. Price to train a paralegal to complete the tasks which defendant characterizes as ministerial. Fur-

thermore, out of the total hours claimed, the ministerial tasks only amounted to .0023 percent of the total hours, for a total of 3.95 hours (Item 138, p. 19). As to the claim that the time spent in telephone conferences with plaintiff and with Mr. Goldstein were excessive, the court notes that the nature of the telephone calls for the most part may be obtained from the context of the ongoing case. Furthermore, in terms of attorney's time, the telephone conferences are only about 12 percent of the total hours claimed. Mr. Price asserts that the majority of these calls were conversations either with plaintiff, Ms. Jackson, or with defense counsel, Mr. Goldstein, about the documents which pertained to Ms. Jackson's work at the EEOC. It would be absolutely essential for Mr. Price to discuss with his client at length the nature of these documents and why it was necessary for her to spend time as to particular problems as they developed. See Item 117. In examining Mr. Price's detailed accounts, the court finds that he used a reasonable amount of time to complete necessary work. *See* Item 125. In addition, the court finds that as a sole practitioner, it would have been inefficient for Mr. Price to have trained a paralegal to complete the tasks which defendant characterizes as "ministerial."

### C. Hourly rate

■ Because this litigation spanned seven years, the question arises as to what hourly rate is appropriate. The practice in this circuit in the case of protracted litigation has been to divide the litigation into two periods, applying the current rate to the most recent phase, and a historic rate to the earlier phase. *Grant v. Martinez,* 973 F.2d 96, 100 (2d Cir.1992). In *Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 2469–70, 105 L.Ed.2d 229 (1989), however, the Supreme Court held that it is within the discretion of the trial court to compensate plaintiff's counsel for delay in payment by applying the current rate to the entire litigation.

Courts in this circuit have employed both current and historic rates, alone and in combination, to determine lodestar amounts. *See, Trief v. Dun & Bradstreet Corp.,* 840 F.Supp. 277 (S.D.N.Y.1993) (current rates

employed); *Myree v. Local 41, Int'l Broth. of Elec. Workers,* 847 F.Supp. 1059 (W.D.N.Y. 1994) (Skretny, J.) (held that historic rates were reasonable); *Walker v. Coughlin,* 909 F.Supp. 872 (W.D.N.Y.1995) (Larimer, J.) (employed two part historic and current rate approach to litigation spanning 16 years; fifteen percent fee reduction for vagueness of records).

Prior to 1991, "delay in payment" compensation was not allowed against the federal government. *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). The Civil Rights Act of 1991, however, authorized "delay in payment" compensation against the federal government and overturned *Shaw.* 42 U.S.C. § 2000e–16(d) (effective November 21, 1991).

Taking these general lodestar calculation criteria into consideration, the court will calculate the fee based on a historic rate for the time spent prior to 1991, and a market rate of $200.00 per hour for 1992 through the end of the litigation. In general, the defense does not claim that the hours expended by plaintiff's attorney were excessive, but defense does object to certain hours spent by plaintiff in preparation for the hearing of motions before Magistrate Judge Foschio. I have reviewed the history of the argument of these motions and have determined that the hours spent by Mr. Price in defending against the motions presented to the Magistrate Judge were reasonable. Item 125, ¶¶ 32–45. Therefore, the court finds that plaintiff's attorney is entitled to the claimed amount of 1,699.10 hours for the work performed in this case. The total fee, therefore, amounts to $306,743.00. Item 124, pp. 8–9.

The principal reason the court adopts this approach is that it best reflects the change in the Civil Rights Act. If the court were to award current rates for the entire period plaintiff would get a windfall; he would be awarded an above-market rate in compensation for delay in payment, although the statute under which he recovered the fee did not authorize such payment for the entire period of the case. Under the historic rate/current rate scheme, plaintiff is compensated as he would have been under the Act through 1991. The court finds plaintiff's pre–1991 historic

rate calculations to be reasonable. Item 126, ¶ 19. Defendant's economist, Dr. Michael J. Vernarelli, makes no specific objections to these rates. Rather, Dr. Vernarelli notes only that Mr. Price's fees rose significantly faster than the rate of inflation from 1988 through 1991. Item 132, ¶ 6. This objection is rejected, considering that it is not at all unusual for a professional in any field to increase his fees significantly faster than the rate of inflation as his skill and reputation in the community grow. As the statements from five respected attorneys in this community attest, Mr. Price became one of the most respected local practitioners in employment discrimination law during the period at issue.

The $200 per hour rate since 1991 is also entirely reasonable, and in fact probably somewhat conservative. Five highly qualified and experienced attorneys state that $200 per hour is currently a reasonable, or slightly below market-rate fee. Item 126, ¶¶ 6–10.

Defendant's argument that this rate is excessive is unpersuasive. The court credits defendant's assertion that plaintiff charged $165.00 per hour for out of court time and $180.00 per hour for court time through March 1992. Item 118, ¶¶ 8–10. But the court grants the $200 fee for all time after 1991 in compensation for the delay in payment since that date. This approach is consistent with the holdings of *Grant v. Martinez,* 973 F.2d 96, 100, and *Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 2469–70, 105 L.Ed.2d 229, and the district court cases construing these decisions.

Consequently, the court sets the lodestar amount at $306,743.00, minus the fifteen percent subtracted for vagueness and failure to provide complete contemporaneous records. There is a "strong presumption" that the lodestar figure represents the reasonable fee. *Grant,* 973 F.2d at 101.

## II. Adjustments to the lodestar amount

### A. Downward adjustments

The court makes no downward adjustment to the lodestar amount. Such adjustments are normally made upon defendant's argument that the fee award is disproportionate

to the prevailing party's success, pursuant to the so-called "billing judgment rule." *See Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). The defense makes no such argument, and the court notes that such an argument would have been unsuccessful in any event. Mr. Price achieved an excellent result for the plaintiff over years of complex work under often difficult conditions.

### B. Upward adjustments

 The district court has the authority to add a bonus to the lodestar figure to compensate counsel for factors such as the risk and complexity of the case, results achieved, and quality of work done by the prevailing attorney. *New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1153 (1983). In *Carey,* the Court of Appeals ultimately awarded a ten percent bonus in recognition of counsel's efforts in that case.

This court, too, finds a ten percent bonus to be appropriate. Mr. Price's work satisfies all the criteria set forth in *Carey.* Many aspects of the case were often complex. Mr. Price achieved nearly all the results plaintiff could have expected had she been successful at trial, and the excellent result was due exclusively to Mr. Price's energetic and perseverant work on this case.

Moreover, the court finds a ten percent bonus appropriate due to the way in which the EEOC supplied documents to the plaintiff. The court was required to intervene in discovery disputes on three or four occasions in 1991. The manner of document production by the defendant required Mr. Price to spend a great deal of time under pressure to make himself ready for depositions, and further warrants the bonus award. It also appears from a review of the record that the problems and delays in document production continued before Magistrate Judge Foschio.

### CONCLUSION

From the foregoing analysis, the court concludes that there will be a fifteen percent reduction of the lodestar amount of $306,-743.00, but a ten percent increase for a bonus. This makes for a total reduction of five

percent, and a total award of $291,405.85. Plaintiff is also entitled to be reimbursed for $14,785.77 in costs which are undisputed.

So ordered.