Donovan BLISSETT, Plaintiff,

v.

Sgt. CASEY, Sgt. Greene, Timothy
Mulhall, and A. Connors, R.N.
Medical Dept., Defendants.

No. 93–CV–218.

United States District Court,
N.D. New York.

June 20, 1997.

See also, 940 F.Supp. 449.

Claudia A. Smith, Kingston, N.Y., Stanley L. Cohen, New York City, James J. Burns, Albany, NY, for Plaintiff.

Dennis C. Vacco, Attorney General, Albany, N.Y., Ronald S. Wu, Assistant Attorney General, of counsel, for Defendants.

## MEMORANDUM-DECISION AND ORDER

McCURN, Senior District Judge.

### Introduction

Perhaps, with the resolution of this motion for fees by plaintiff Donovan Blissett's attorneys, this protracted litigation, spanning more than fourteen years, will finally come to an end.

Originally plaintiff Blissett commenced this action *pro se*. Eventually, on November 5, 1991, the court appointed attorney James J. Burns as plaintiff's *pro bono* counsel. By order dated January 31, 1996, the court granted attorney Burns' motion to withdraw.[1] Thereafter, in March, 1996, plaintiff retained the services of attorneys Stanley L. Cohen and Claudia A. Smith. The record is incomplete as to the exact date and circumstances surrounding plaintiff's retention of attorneys Cohen and Smith. Evidently there was no retainer agreement between plaintiff and those two attorneys, however, because undoubtedly they contemplated that if plaintiff prevailed, they would be compensated in accordance with 42 U.S.C. § 1988.[2]

As their time records indicate, commencing in March, 1996, attorneys Cohen and Smith performed various legal services for plaintiff Blissett, including serving as counsel during the trial of this matter which was conducted between July 1, 1996 and July 8, 1996. Eventually, through the practice of remittitur, plaintiff obtained a $22,978.00 judgment.

### Background

Each of the three attorneys who have variously represented plaintiff Blissett during the course of this litigation are now seeking their fees, and in the case of attorney Cohen, also expenses. Attorney James Burns is seeking a total of $45,997.50 in fees. Pl. exh. A (Affidavit of James J. Burns (July 25, 1996) ("Burns Aff."), at 8, ¶ 23). Attorney Burns claims that that figure represents 340.7 hours[3] expended in this case multiplied

---

1. The precipitating event for that motion was the fact that in October, 1995, plaintiff obtained a substantial monetary judgment in another lawsuit. Once attorney Burns became aware of plaintiff's changed financial status as a result of that judgment, and that plaintiff no longer qualified for *pro bono* representation, attorney Burns rightfully contacted the court. Docket Entry (Doc.) # 145, exh. D thereto. Pursuant to the court's instructions, attorney Burns then attempted to enter into a retainer agreement with plaintiff. *Id.* When plaintiff did not respond to attorney Burns' overtures as to that retainer agreement, Burns moved to withdraw as *plaintiff's pro bono* counsel, and the court granted that motion. Doc. # 150.

2. Among other things, that statute authorizes a court, in its discretion, to award attorney's fees to a party who prevails in an action brought pursuant to 42 U.S.C. § 1983. *See* 42 U.S.C. § 1983 (West Supp.1993).

3. Attorney Burns is not billing for 4.2 hours expended by law clerks, or the 10.95 hours he expended preparing his motion to withdraw. Burns Aff., at 3, ¶ 10. Also, in exercising "substantial billing judgment," attorney Burns avers "[t]here were many hours that [he] never billed to the file[,]" such as time expended attending a conference on civil rights litigation in federal courts, and time expended on an aborted attempt to meet with plaintiff. *Id.* at 4, ¶ 11.

by his regular hourly rate of $135.00,[4] including time expended making this motion for fees. *Id.* Seeking compensation at the rate of $250.00 per hour attorney Stanley Cohen requests fees totaling $38,500.00, plus $1,007.00 in expenses. Pl. exh. B (Affidavit of Stanley L. Cohen (Feb. 9, 1997) ("Cohen Aff."), at ¶ 4). Cohen's requested fee is based upon an hourly rate of $250.00, multiplied by 154 hours of legal work. Attorney Cohen is not seeking compensation, however, for 31.50 hours of work performed by various law clerks, paralegals and medical experts employed by his firm. *Id.* at n. 1. Nor is he seeking payment for the twenty-four hours he expended assisting in post-trial matters. *Id.* Plaintiff's third attorney, Claudia Smith, is seeking a total of $35,278.13 in fees. Pl. exh. C (Affidavit of Claudia A. Smith (Feb. 13, 1997) ("Smith Aff."), at 5, ¶ 15). But her calculations also are not accurate. Attorney Smith is requesting $150.00 per hour for the 236.90 hours she billed for legal services rendered, which includes the 31.50 hours she expended preparing this motion. *Id.* In addition, she is seeking $4,528.13 for 40.25 hours of travel time at the rate of $112.50 per hour, or seventy-five percent of her usual $150 hourly billing rate. *Id.* The total of the foregoing is $40,063.13, and not $35,278.13, as attorney Smith states.

In opposing this motion, the defendants first assert that it is not timely, and, on that basis alone, the court should decline to award any fees. Second, the defendants contend that although a fee award may be appropriate under 42 U.S.C. § 1988, any such award is limited by section 803(d) of the recently enacted Prisoner Litigation Reform Act of 1995 (the "PLRA" or the "Act"), 42 U.S.C. § 1997e(d) (West Supp.1997).[5] If the court disagrees with the defendants, and finds that the PLRA is not applicable, the defendants next assert that a reasonable hourly rate here is $150.00. Finally, the defendants

maintain that because the court denied plaintiff's motion for an interlocutory appeal, attorney Smith[6] is not entitled to recover fees for preparation of that motion because plaintiff did not prevail thereon. The court will address each of these opposition arguments in turn.

### Discussion

### I. Timeliness

Judgment in this case was entered on January 28, 1997. Doc. # 190. This attorneys' fee motion was filed with the court on February 21, 1997. Doc. # 192 and # 193. Relying upon Fed.R.Civ.P. 54(d)(2)(B), which provides, in relevant part, "[u]nless otherwise provided by statute or order of the court, [a] motion [for attorneys' fees] must be filed and served no later than 14 days after entry of judgment[,]" the defendants contend that because plaintiff's motion was not filed until twenty-one days after entry of the judgment, the court should deny it as untimely. Invoking Fed.R.Civ.P. 6(b)(2), plaintiff contends that the court should overlook the fact that he did not timely file this attorneys' fee motion because his failure to do so was the result of "excusable neglect." Attorney Smith elaborates that she "[i]nadvertently, . . . miscalculated the time that the motion was due and mailed it to the Court on February 13, 1997 for filing and to the Assistant Attorney General for service the same day." Affirmation of Claudia A. Smith (Mar. 12, 1997), at 1, ¶ 4.

Rule 6(b)(2) provides in relevant part that "[w]hen by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified

---

4. Attorney Burns' calculations are not quite accurate, however. The product of 340.7 multiplied by $135.00 is $45,994.50, and not $45,997.50 as attorney Burns avers.

5. The PLRA was actually part of a larger piece of legislation, the Omnibus Consolidated Rescissions and Appropriations Act of 1996. *Leonard v. Lacy,* 88 F.3d 181, 182–83 (2d Cir.1996).

6. Although defendants do not identify attorney Smith as the attorney responsible for that unsuccessful motion, the record indicates that she expended a total of 3.50 hours in preparing that motion. Smith Aff., attachment thereto at 2. Attorneys Burns and Cohen did not work on that motion at all.

period [7] permit the act to be done where the failure to act was the result of *excusable neglect[.]"* Fed.R.Civ.P. 6(b)(2) (emphasis and footnote added). Rule 6 does not define "excusable neglect." In *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), however, the Supreme Court discussed at some length the concept of "excusable neglect." The *Pioneer* Court's discussion of excusable neglect was within the context of Bankruptcy Rule 9006(b), which permits bankruptcy courts to allow creditors to file claims after the imposed "bar date," or deadline for filing such claims. Nonetheless, that discussion of excusable neglect is instructive here because the *Pioneer* Court explicitly referred to Fed.R.Civ.P. 6(b), among other Rules, as also containing the phrase "excusable neglect." *Pioneer,* 507 U.S. at 391–93, 113 S.Ct. at 1496–97. Indeed, "[t]he *[Pioneer]* Court specifically observed that in Fed.R.Civ.P. 6(b), as in Bankruptcy Rule 9006(b) which it was construing, 'there is no indication that anything other than the commonly accepted meaning of [excusable neglect] was intended.'" *Pratt v. Philbrook,* 109 F.3d 18, 19 n. 1 (1st Cir.1997) (quoting *Pioneer,* 507 U.S. at 391, 113 S.Ct. at 1496). Moreover, "the language of Rule 9006(b) is almost identical to the language of Rule 6(b)." *44 Liquormart, Inc. v. State of R.I.,* 940 F.Supp. 437, 440 n. 2 (D.R.I.1996). Thus, "[s]ince *Pioneer,* courts have concluded the *Pioneer* standard of 'excusable neglect' should apply to Fed.R.Civ.P. 6(b)." *Id.* (citations omitted). In following that trend, the First Circuit in *Pratt* astutely observed that "[b]y construing 'excusable neglect,' a phrase used through the Federal Civil, Criminal and Appellate Rules of Procedure, *Pioneer* must be understood to provide guidance *outside the bankruptcy context." Id.* (emphasis added) (footnotes omitted).

■ As the Supreme Court has acknowledged, "'[e]xcusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of movant." *LoSacco v. City of Middletown,* 71 F.3d 88, 93 (2d Cir.1995) (quoting *Pioneer,* 507 U.S. at 392, 113 S.Ct. at 1496). "Rather, [excusable neglect] may encompass delays 'caused by inadvertence, mistake, or carelessness,' . . ., at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and movant's excuse has some merit[.]" *Id.* (quoting *Pioneer,* 507 U.S. at 388, and 394–95, 113 S.Ct. at 1495 and 1498); *see also Natural Father and Natural Mother v. Tolbert,* 170 F.R.D. 107, 110 (S.D.N.Y.1997) (internal citations and quotations omitted) ("Excusable neglect encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness[.]"). A determination of excusable neglect will not be overturned on appeal absent a showing of abuse of discretion. *LoSacco,* 71 F.3d at 93 (citing, *inter alia, Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 895–98, 110 S.Ct. 3177, 3192–94, 111 L.Ed.2d 695 (1990)).

■ Applying the three factor test articulated by the *Pioneer* Court to the record presently before it persuades the court that plaintiff Blissett's failure to timely file this motion was the result of excusable neglect. As to the danger of prejudice to the opposing party (here, the defendants), this factor weighs in favor of a finding of excusable neglect. In arguing that this fee motion should be denied as untimely, defendants make absolutely no mention of potential prejudice. What is more, it is difficult to see how there could be any prejudice to the defendants because, by their own admission, they received this fee motion on February 18, 1997. Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees ("Def. Memo.") at 2.[8] Therefore, in keeping with one of the purposes of the fourteen day filing requirement for attor-

---

7. Despite the fact that plaintiff Blissett did not formally move for an extension of time under this Rule, the court is treating his Reply Memorandum and accompanying affirmation of attorney Smith, which both address the issue of the timeliness of this fee motion, as a "motion" requesting an extension under Rule 6(b)(2).

8. In violation of Local Rule 10.1(a), the pages of defendants' memorandum are not numbered. For ease of reference, the court has taken the liberty of numbering the same.

ney's fee motions, which "is to assure that the opposing party is informed of the [fee] claim before the time for appeal is lapsed[,]"[9] defendants still had ten days from the date of receipt of this motion in which to decide whether or not to file an appeal.

With respect to the second *Pioneer* factor, "the length of the delay and its potential impact on the judicial proceedings,"[10] the court finds that the delay here—whether calculated as two days or ten[11]—is relatively insignificant and does not warrant a denial of plaintiff's motion for attorneys' fees. The final *Pioneer* factor—the reason for the delay in light of the movant's good faith efforts and whether the circumstances were within the movant's reasonable control—"is the pivotal determinant of 'excusable neglect.'" *Tolbert, supra,* 170 F.R.D. at 110 (internal quotations and citation omitted). Attorney Smith's miscalculation of the filing and service date for this fee motion is, in this court's opinion, an "omission caused by carelessness," and thus constitutes excusable neglect,[12] especially taking into account, as previously mentioned, the fact that the delay here was slight and that there was no prejudice to defendants. Nor is there any evidence in the record of bad faith on Ms. Smith's part; and, there is some, albeit not much, merit to plaintiff's excuse.

In finding excusable neglect, the court is fully cognizant of case law, which although not relied upon by the defendants herein,[13] arguably could support their assertion that this fee motion is untimely. For example, in *In re Cosmopolitan Aviation Corp.,* 763 F.2d 507 (2d Cir.1985), the Second Circuit stated, "[t]he excusable neglect standard can never be met by a showing of inability, or refusal to read and comprehend the plain language of the federal rules." *Id.* at 515. At first glance that unequivocal language, especially considering the Second Circuit's holding that the district court abused its discretion in granting an extension of time in which to file a notice of appeal, seems to require this court to find that plaintiff Blissett has not shown excusable neglect. A careful reading of *Cosmopolitan* reveals, though, that the party seeking the extension there had engaged in "truly remarkable bad faith ... throughout th[at] litigation[,] ... continually mischaracteriz[ing] facts, prior proceedings and the law." *Id.* at 509. Although the Second Circuit did not specifically cite that bad faith as a basis for reversing the district court's granting of an extension, such conduct undoubtedly influenced that determination.

Likewise, in *Allstate Ins. Co. v. Administratia Asigurarilor,* 163 F.R.D. 196 (S.D.N.Y. 1995), the court found no excusable neglect where counsel did not adhere to the twenty-day time limit for the filing of an answer. In so holding, the court reasoned, *inter alia,* that "[d]efense counsel's failure to under-

---

9. Fed.R.Civ.P. 54, Advisory Committee Notes, 1993 Amendments.

10. *Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498.

11. Given the judgment entry date of January 28, 1997, in accordance with Rule 54(b)(2)(B), plaintiff had fourteen days from that date in which to file and serve this fee motion, or until February 11, 1997. Evidently calculating from the February 13, 1997, mailing date, plaintiff claims that the delay here was a mere two days. That is correct if plaintiff ignores Rule 54(b)(2)(B)'s mandate that an attorney's fee motion "must be filed *and* served no later than 14 days after entry of judgment[.]" Fed.R.Civ.P. 54(b)(2)(B) (emphasis added). A strict interpretation of that fourteen day requirement would mean that plaintiff's fee motion was actually ten days late because it was not filed with the court until February 21, 1997.

12. *Fidelity Federal Sav. and Loan Ass'n v. Felicetti,* 148 F.R.D. 532, 533 (E.D.Pa.1993) (court accepted untimely response to motion to compel

where the delay was only one business day and "was the result of counsel's inadvertent miscalculation of the response date[]"); *Dugan v. Selco Industries, Inc.,* 96 C 8404, 1997 WL 116841, at *1 (N.D.Ill. Mar.12, 1997) (denying plaintiffs' motion to strike as untimely an answer filed one day late due to counsel's "inadvertent mistake" in ascertaining the date of service for the summons); *but see 44 Liquormart, supra,* 940 F.Supp. at 440–42 (denying as untimely section 1988 motion for attorneys' fees even though the status of the case had changed from one in which attorneys' fees were not available to one in which they were, and even though the delay was attributable, in part, to personnel problems in attorney's office).

13. Not only did defendants fail to mention any of the cases discussed above, but they failed to provide any case law whatsoever to support their argument that this motion is untimely.

stand the plain language of the Federal Rules of Civil Procedure does not constitute excusable neglect." *Id.* at 198 (citations omitted). Again, while initially it appears that attorney Smith stands in the same position as defense counsel in *Allstate,* in that she failed to understand the plain language of Rule 54(d)(2)(B), close examination of *Allstate* indicates that "defense counsel's performance ... [was] appalling." *Id.* at 199. Certainly that is *not* the case with attorney Smith's conduct.

Admittedly, the foregoing case law gives the court pause in assessing whether attorney Smith's inadvertent miscalculation is tantamount to excusable neglect. However, because the cases just discussed are factually distinguishable in terms of bad faith, a different result is warranted in this case where no bad faith is evident. Thus, after "taking account of all relevant circumstances surrounding [plaintiffs] omissions," [14] and given the *Pioneer* Court's "forgiving attitude toward instances of 'excusable neglect[,]' " [15] in the exercise of its discretion, even though untimely, the court will consider the merits of the fee motion in this fourteen year old case.

## II. Applicability of PLRA

■ "On April 26, 1996, the President signed the Omnibus Consolidated Rescissions and Appropriations Act of 1996, ..., Title VIII of which is the Prison Litigation Reform Act of 1995 ['PLRA']." *Leonard, supra,* 88 F.3d at 182–83 (citation omitted). That Act does not designate an effective date. *Duamutef v. O'Keefe,* 98 F.3d 22, 24 (2d Cir.1996). Therefore, it is deemed to have become effective on the date the President signed it. *See Moates v. Barkley,* 927 F.Supp. 597, 598 (E.D.N.Y.1996) (citation omitted).

14. *Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498.

15. *Pratt, supra,* 109 F.3d at 22.

16. As will be seen, defendants' failure to discuss the retroactivity issue is inexcusable given the existence of case law, albeit scant, addressing that issue. Indeed, although the court will not do so, defense counsel's failure to support his argument that this fee motion is governed by section 1997e(d), as well as his failure to cite any

Among other things, section 803 of the PLRA amended 42 U.S.C. § 1997e(d), placing certain limitations upon attorney's fees recoverable in prisoner litigation. In particular, 42 U.S.C. § 1997e(d) provides, in relevant part, as follows:

> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that–...

> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

> (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for court-appointed counsel.

42 U.S.C. § 1997e(d) (West Supp.1997). With absolutely no discussion, defendants assume that section 1997e(d) in its current form applies to the fee applications of the three attorneys who have represented plaintiff over the course of this litigation. [16]

Based upon section 1997e(d) of the PLRA, defendants are seeking to limit their potential liability for plaintiff's attorneys' fees in two ways. First, relying upon subsection three of that statute, employing what they believe to be the appropriate hourly rate under 18 U.S.C. § 3006A (that is, sixty dollars per hour for in-court time and forty

authority contradicting this argument, arguably could give rise to an award of Rule 11 sanctions. *See Allstate, supra,* 163 F.R.D. at 200 (ordering defense counsel to show cause why she should not be sanctioned under Rule 11 where she "fail[ed] to present th[e] Court with authority to support her argument ..., [and] she neglected to cite any of the cases that contradict [her] argument[ ]").

dollars per hour for out-of-court time),[17] defendants contend that plaintiff is only entitled to recover "approximately $46,569.00, not including plaintiff's portion of the costs."[18] Def. Memo. at 4.

The second way in which defendants are seeking to limit their potential liability for plaintiffs' attorneys' fees is through section 1997e(d)(2). In accordance with that subsection, defendants maintain that twenty-five percent of the $22,978.00 judgment, or $5,744.50, should be applied to satisfy any attorneys' fees which the court may award. Thus, by reducing the hourly rate sought in accordance with the PLRA, and requiring the plaintiff, also in accordance with that Act, to contribute twenty-five percent of his judgment towards the fee award, defendants contend that they are liable to plaintiff for only $40,824.50 in attorneys' fees.

Plaintiffs' attorneys strenuously object to the court imposing the PLRA's limitations on any fees awarded to them, but they do so for slightly different reasons. Attorney Burns responds that the PLRA should not be applied retroactively to reduce the amount of fees to which he would otherwise be entitled because his legal services were all rendered well before the Act's April 26, 1996, effective date. Despite the fact that the majority of the legal services rendered by attorneys Cohen and Smith were performed after the PLRA's effective date, they too maintain that the Act's cap on attorneys' fees should not apply to them. Attorneys Cohen and Smith argue that it would be "manifestly unjust" to limit their fees under the PLRA because, based upon their prior experience in civil rights cases, including section 1983 cases,

when they were retained by plaintiff Blissett prior to the Act's effective date, they expected that if he prevailed, they would be compensated in accordance with 42 U.S.C. § 1988 and the case law construing that statute. They did not contemplate that any fee to which they might be entitled would be subject to the attorneys' fee limitations of the PLRA. Reply Memorandum of Law in Support of Plaintiff's Motion for Attorneys' Fees ("Reply") at 7.

First the court will examine whether the PLRA's attorney's fees limitation applies to attorney Burns. It will then go on to consider the applicability of that limitation to the fees sought by attorneys Cohen and Smith.

## A. Attorney Burns

■ The Second Circuit has not yet addressed the issue of whether section 1997e(d) of the PLRA applies retroactively, although it has held that the Act's filing fee obligations apply retroactively. *Covino v. Reopel*, 89 F.3d 105, 107 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1265, 137 L.Ed.2d 344 (1997). Two Circuit Courts have directly confronted this issue, however, and both have held that the PLRA's provision limiting attorney's fees in prisoner litigation does not apply retroactively. The Eighth Circuit in *Jensen v. Clarke*, 94 F.3d 1191 (8th Cir.1996), declined to apply section 1997e(d) retroactively because the PLRA "was not in effect when the plaintiffs' attorneys accepted th[eir] appointment." *Id.* at 1202. Nor was the Act in effect "when liability and fee determinations were made[.]" *Id.* Indeed, the PLRA still was not in effect even when the Eighth Circuit remanded *Jensen* to the district court

---

17. Assuming for the moment that plaintiff's attorneys should be compensated in accordance with section 1997e(d)(3), as this court just recently held, the rate of remuneration thereunder is $67.50 per hour for out-of-court time and $97.50 per hour for in-court time, and *not* the lesser dollar amount which the defendants are suggesting. *See Clark v. Phillips*, 965 F.Supp. 331, 335–36 (N.D.N.Y.1997).

18. There are two aspects of defendants' calculations which are puzzling. The first is their contention that the fees to which plaintiff's attorneys are entitled are *"approximately* $46,569.00[.]" Def. Memo. at 4 (emphasis added). Using simple arithmetic, defendants should be able to easily

ascertain the exact amount of fees to which they believe plaintiff's attorneys are entitled. The second aspect of defendants' calculations which is puzzling is the discrepancy between the amount which, based upon the figures supplied by plaintiffs' attorneys, the court calculates that those attorneys are seeking (a total of $120,782.63) and the amount defendants claim they are seeking— $119,772.63. The court arrived at the $120,-782.63 figure by adding the $45,997.50 in fees which attorney Burns is seeking, *see* Burns Aff. at 8; the $39,507.00 in fees *and* expenses which attorney Cohen is seeking, *see* Cohen Aff. at ¶ 4; and the $35,278.13 in fees which attorney Smith is seeking, *see* Smith Aff. at 5.

in light of the Supreme Court's decision in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). *Id.* Further, reasoned the *Jensen* Court

> the plaintiffs and their attorneys have proceeded from the outset under the assumption that Section 1988 would apply to this case.... It would be 'manifestly unjust' to upset those reasonable expectations and impose new guidelines at this late date.

*Id.* at 1203.

Besides not wanting to upset the reasonable expectations of plaintiffs and their attorneys, the *Jensen* Court relied upon a textual argument, reasoning that section 1997e(d) should not be applied retroactively because there was "evidence of congressional intent" to the contrary. *Id.* Namely, section 802 of the PLRA dealing with prospective relief expressly provides that it shall apply retroactively, whereas section 803, which amended section 1997e, is silent as to its retroactive application. *Id.* Thus, the Eighth Circuit concluded that "[t]he exclusion of Section 803 and its fee provisions from that clear statement [of retroactivity in section 802] is inconsistent with the defendants' argument for retroactivity." *Id.*

Following the lead of the *Jensen* Court, the Seventh Circuit in *Cooper v. Casey,* 97 F.3d 914 (7th Cir.1996), likewise held that section 1997e(d) of the PLRA does not have retroactive effect. *Id.* at 921. "To give it [the Act] such effect would attach (without clear indication of congressional intent to do so) new legal consequences to completed conduct, namely the services rendered by the plaintiffs' counsel in advance of the passage of the new Act." *Id.* (citations omitted).

For nearly identical reasons, the court in *Weaver v. Clarke,* 933 F.Supp. 831 (D.Neb. 1996), a case upon which attorney Burns relies, reached the same result. The *Weaver* court held that section 803(d)(1)(A) [19] of the PLRA should not be applied retroactively in

that case because *"all of the action"* that triggered entitlement to an attorney's fees award took place prior to the date of enactment of the PLRA." *Id.* at 835 (emphasis added). In declining to apply that particular provision of the PLRA retroactively, the *Weaver* court further reasoned that "since Congress has not specified an effective date, retroactive imposition of the section of the PLRA upon which defendants rely would cause 'manifest injustice' to lawyers like Plaintiff's counsel who have performed their ethical obligations to the courts upon settled expectations premised upon precedent that if they 'prevailed' they would be compensated." *Id.* As these cases make abundantly clear, attorney Burns is not subject to the fee limitations of the PLRA because, with the exception of time expended on this fee application, which the court will later discuss, the legal services which he rendered were performed prior to the PLRA's April 26, 1996, effective date.[20] Consequently, in calculating attorney Burns' fee award, the court is not bound by the attorney's fee limitations found in section 1997e(d) of the PLRA.

### B. Attorneys Cohen and Smith

Given the lack of case law directly on point, it is not so obvious, however, whether the PLRA's limitations on attorney's fees apply to the fees which attorneys Cohen and Smith are seeking. In the case law discussed above, the legal services were all rendered before the PLRA's effective date. Indeed, in *Jensen,* the fee determination had already been made once; it was only an intervening change in case law that ultimately required the Court there to revisit the fee issue, and consider whether to apply the PLRA's attorney's fee provision retroactively. In the present case, however, as previously mentioned, the majority of the legal services rendered by attorneys Cohen and Smith were rendered after the passage of the

---

19. That particular provision of the PLRA provides, among other things, that no fees shall be awarded unless "directly and reasonably incurred in proving an actual violation of plaintiff's rights...." 42 U.S.C. § 1997e(d)(1)(A) (West Supp.1997).

20. In fact, with the exception of time expended on this fee application, attorney Burns' last recorded work on this case was on December 7, 1995, approximately four and a half months before the PLRA became effective. *See* Burns Aff., exh. A thereto at 10.

PLRA.[21] Therefore, this court must decide whether application of the PLRA's attorney's fee provision would have an impermissible retroactive effect here, where the attorneys were retained *prior* to the passage of the Act, but performed roughly eighty-five percent of their legal services *after* the Act's passage.

■ As mentioned earlier, the PRLA has no effective date. Nor is there any mention in section 803(d) as to that section's retroactive application. The PLRA's legislative history is sparse; *Zehner v. Trigg*, 952 F.Supp. 1318, 1324 (S.D.Ind.1997); and there is no legislative history regarding this particular provision of the Act, although clearly Congress' general purpose in passing the PLRA "was ... to discourage the filing of frivolous suits and appeals by prisoners." *McGann v. Com'r. Social Sec. Admin.*, 96 F.3d 28, 31 (2d Cir.1996). Given the absence of an effective date in the PLRA, as well as the absence of any guidance on the issue of retroactive application (either from the PLRA itself or from its legislative history), "the Second Circuit has used the standards set forth by the Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), to determine whether or not particular sections of the PLRA apply retroactively[,]" and so too will this court. *See Harris v. Lord*, 957 F.Supp. 471, 474 (S.D.N.Y.1997) (citing *Covino, supra*, 89 F.3d at 105).[22]

■ In *Landgraf*, the Supreme Court instructed that in deciding whether a newly enacted statute should be applied to pending cases, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." 511 U.S. at 280, 114 S.Ct. at 1505. Nothing in the PLRA's attorney's fee provision prescribes its reach.

*Jensen*, 94 F.3d at 1202. Therefore, under *Landgraf*, "the court must determine whether the statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505. "If so, then the 'traditional presumption' against retroactivity precludes application 'absent congressional intent favoring such a result.'" *Jensen*, 94 F.3d at 1202 (quoting *Landgraf*, 511 U.S. at 280–81, 114 S.Ct. at 1505).[23]

■ Analysis of the present case under the standards articulated by the *Landgraf* Court convinces this court that the PLRA's attorney's fee limitations, 42 U.S.C. § 1997e(d), should not apply to legal services rendered by attorneys Cohen and Smith. To be sure, those attorneys did complete most of their work on this case after the PLRA's effective date. Contrary to what defendants implicitly suggest, however, in determining whether to retroactively apply section 1997e(d) to this case, the court should not focus exclusively upon when the legal services were rendered. That focus is too narrow and fails to take into account the reasonable expectations of attorneys Cohen and Smith when they agreed to represent plaintiff Blissett. Similarly, focusing on whether the legal services were rendered before or after the enactment of the PLRA fails to take into account plaintiff Blissett's reasonable expectations when he retained attorneys Cohen and Smith and decided to persevere with this action. Instead, in the court's view, the relevant event for retroactivity purposes is the date when attorneys Cohen and Smith agreed to represent plaintiff Blissett.

**21.** Attorneys Cohen and Smith estimate that prior to the Act's effective date they had completed approximately fifteen percent of the total legal services which they rendered on plaintiff's behalf. Reply at 7.

**22.** *See also U.S. v. Certain Funds at Hong Kong, Shanghai Banking Corp.*, 96 F.3d 20, 24 (2d Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997) (applying *Landgraf* criteria "[b]ecause neither the language of [the statute at issue] nor its legislative history provide

any guidance as to whether it should apply to cases pending at the time of its passage[]").

**23.** *See also Hughes Aircraft Company v. United States*, — U.S. —, — – —, 117 S.Ct. 1871, 1875–76, 138 L.Ed.2d 135 (1997) (citing *Landgraf*, 511 U.S. at 268, 114 S.Ct. at 1498–1499) ("[W]e apply this time-honored presumption [against retroactive legislation] unless Congress has clearly manifested its intent to the contrary.").

When the court focuses on the circumstances under which attorneys Cohen and Smith agreed to represent plaintiff, it is persuaded that application of section 1997e(d) of the PRLA would "impose new duties with respect to transactions already completed[;]" and thus have an impermissible "retroactive effect." *See Landgraf,* 511 U.S. at 267 and 280, 114 S.Ct. at 1498 and 1505.[24] In particular, application of section 1997e(d) to the present case imposes an entirely new obligation on plaintiff Blissett which did not previously exist—payment of a percentage of his attorneys' fees out of the judgment rendered in his favor. Likewise, it takes away a right previously possessed by plaintiff—the right to be fully compensated, without a percentage reduction for attorneys' fees, for a violation of his constitutional rights. Moreover, when attorneys Cohen and Smith agreed to represent plaintiff Blissett, they had a reasonable expectation that if successful, they would be entitled to recover their fees in accordance with 42 U.S.C. § 1988, unencumbered by any later enacted legislation such as the PLRA. Attorneys Cohen and Smith structured their conduct (agreeing to represent plaintiff Blissett) on a right (to be compensated pursuant to the rates established under section 1988) which, although not abolished by the passage of the section 1997e(d), was limited by the passage of that statute. Therefore, even though attorneys Cohen and Smith rendered nearly all of their legal services after the PRLA's effective date, the court finds that that factor is not dispositive of the whether their fees should be restricted

by that Act's attorney's fee limitations. Instead, for the reasons just stated, the court finds that "application of the [PLRA] in this [particular] case would have the effect of disappointing reasonable reliance on prior law[,]" thus "leav[ing] [the court] with the 'traditional presumption' against retroactive application." *See Jensen,* 94 F.3d at 1202. Consequently, in determining the fees to which attorneys Cohen and Smith are entitled, the court will look to section 1988 and the case law construing that statute.[25] It will not cap the requested fees in accordance with section 1997e(d)(3) of the PLRA; nor will it require that a portion of the attorneys' fees recovered herein be paid out of plaintiff Blissett's judgment, as section 1997e(d)(2) of that Act further directs.[26] In the court's opinion, a contrary holding here would result in manifest injustice to attorneys Cohen and Smith. *See Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (court should "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary").

### III. Section 1988 Fees

Having determined that none of plaintiff's three attorneys are subject to the PLRA's cap on attorney's fees, the issue, as framed by the parties, becomes at what hourly rate should they be compensated. Before addressing that issue, the court will briefly review the legal principles which necessarily

---

24. *Cf. Harris v. Lord,* 957 F.Supp. 471, 474 (S.D.N.Y.1997) (PLRA section denying inmate cause of action for mental or emotional injury without showing of physical injury did not apply retroactively because that section attached new legal consequences to events completed before the PLRA's enactment, and it denied the inmate a cause of action where she once had a "legally cognizable claim").

25. Likewise, the court will also apply section 1988 rates to the fees attorney Burns is requesting for preparing this fee motion, even though that legal work was performed after the PLRA's April 16, 1996, effective date.

26. In *Hadix v. Johnson,* 947 F.Supp. 1113 (E.D.Mich.1996), the court held that the PLRA's attorney's fee provision applies to legal services rendered after the effective date of the Act, although that same court had previously held that

the Act's fee limitations did not apply to work performed before its enactment. *Id.* at 1114 and n. 1. The defendants herein are not relying upon *Hadix* (or, as previously mentioned, upon any case law). Admittedly, though, *Hadix* supports defendants' position that any fees for work performed by attorneys Cohen and Smith after April 26, 1996, should be limited by the PLRA's attorney's fee provision, and that plaintiff Blissett should be required to pay a portion of the fees out of his judgment. The court declines to follow *Hadix,* however, because, as discussed above, it believes that the proper focus in a case such as this is on what the parties (plaintiff and his attorneys) reasonably expected in terms of remuneration when they agreed to enter into an attorney/client relationship—not when the legal services were rendered.

guide its determination of the fees to be awarded herein.

### A. "Prevailing Party"

Given the jury verdict finding defendants Casey, Connors, Greene, and Mulhall liable for violating plaintiff Blissett's constitutional right to be free from cruel and unusual punishment, and the concomitant monetary award, including punitive damages, there is no dispute that he is a prevailing party within the meaning of 42 U.S.C. § 1988, and thus entitled to recover his reasonable attorneys' fees thereunder. *See DeCarlo v. Perales,* 963 F.Supp. 181, 184 (N.D.N.Y.1997) ("The plaintiffs are clearly the prevailing parties as against Commissioner DuRose, not only attaining a judgment that he violated their constitutional rights, but also a monetary verdict in the sum of $300,000.").[27]

■■■■ Defendants do not dispute that plaintiff was a prevailing party at trial, but they are contending that he was not a prevailing party with respect to the section 1292(b) motion for certification of an interlocutory appeal, which the court denied.[28] Thus, argue the defendants, plaintiff is not entitled to recover his attorney's fees for the time expended by attorney Smith in making that unsuccessful motion. The court disagrees. "The law is clear that '[u]nsuccessful legal efforts are compensable as long as they are not frivolous.'" *Berry v. N.Y. State Dept. of Correctional Services,* 947 F.Supp. 647, 652 (W.D.N.Y.1996) (quoting *Big R. Food Warehouses v. Local 338 RWDSU,* 896 F.Supp. 292, 298 (E.D.N.Y.1995)) (other citation omitted); *see also Seigal v. Merrick,* 619 F.2d 160, 165 (2d Cir.1980) (reversing deduction from fee award for work on "unfruitful," but not frivolous claims). Even though plaintiff did not prevail on his interlocutory appeal

motion, in the court's opinion, the argument advanced by plaintiff in that motion was not so untenable as to rise (or sink, as the case may be), to the level of a frivolous motion. Moreover, as the record demonstrates, clearly plaintiff Blissett prevailed on significant issues in this case. *See Ward v. Brown,* 899 F.Supp. 123, 126 (W.D.N.Y.1995) (citation omitted) ("In light of plaintiff's victory on that major issue [reinstatement of his job], his failure to prevail on the lesser matter of [whether he verbally abused a patient] does not significantly detract from his overall success."). Consequently, attorney Smith's efforts in preparing the section 1292(b) motion are compensable, despite defendants' protestations to the contrary.

### B. Calculating the "Lodestar"

■■■■ Having made the threshold determination that plaintiff is a prevailing party within the meaning of section 1988, the court will next consider the amount of attorneys' fees to be awarded. In arriving at a reasonable attorney's fee, district courts should begin by using the "lodestar" amount, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Orchano v. Advanced Recovery, Inc.,* 107 F.3d 94, 98 (2d Cir.1997) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). In determining whether hours were reasonably expended, courts should "exclude hours that '[w]ere excessive, redundant, or otherwise unnecessary' due to, for example, 'overstaff[ing][.]'" *Id.* (quoting *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40). "Calculation of the lodestar also requires the court to determine the prevailing market rates for the type of services rendered, . . ., *i.e.,* the fees that would be charged for similar work by attor-

---

**27.** *See also Lilly v. County of Orange,* 910 F.Supp. 945, 949 (S.D.N.Y.1996) (citation omitted) (plaintiff who was awarded damages on her section 1983 claim against one of the defendants was a prevailing party for purposes of recovering her attorney's fees under section 1988).

**28.** Under the practice of remittitur, finding the jury award of punitive damages against defendants Connors and Mulhall excessive, the court reduced that award. Rather than accepting the remitted damage award, plaintiff Blissett filed a

motion seeking leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), claiming that there was "[a] substantial ground for difference of opinion" as to whether the punitive damage awards against those two defendants "shock[ed] the judicial conscience." Doc. # 180 at 2, ¶ 2 (internal quotations and citations omitted). After determining that plaintiff had not met any of the three criteria justifying an interlocutory appeal under section 1292(b), the court denied plaintiff's motion. Doc. # 182.

neys of like skill in the area[.]" *Id.* (internal quotations and citations omitted).

■ The difficulty arises, however, when, as here, " 'lawyers come from out of town to litigate a suit.' " *Segarra v. Messina,* 158 F.R.D. 230, 234 (N.D.N.Y.1994) (quoting *Donnell v. United States,* 682 F.2d 240, 251 (D.C.Cir.1982)). In that situation, "[t]he 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' " *Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir.1997) (quoting *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)). The Second Circuit has instructed "that the 'prevailing community' the district court should consider to determine the 'lodestar' figure is 'the district in which the court sits.' " *Id.* (quoting *Polk v. New York State Dep't of Correctional Servs.,* 722 F.2d 23, 25 (2d Cir. 1983)). As the foregoing makes clear, the appropriate hourly rate to be applied in calculating the fee awards in the present action is the prevailing rate in the Northern District of New York where this action was litigated, "irrespective of the fee usually charged by the attorney." [29] *See Segarra,* 158 F.R.D. at 234.

■ It is against this backdrop that the court will consider (1) the reasonableness of the hourly rates plaintiffs' attorneys are seeking; and (2) the reasonableness of the hours expended by plaintiffs' attorneys. In addressing those issues, the court is mindful of its obligation to make sufficient findings of fact to substantiate any fees awarded under section 1988. *See Orchano,* 107 F.3d at 97

and 99 (vacating and remanding case where district court failed to make adequate factual findings in calculating a fee award in a civil rights action). The court is also mindful of the Second Circuit's "warn[ing]" that attorney's fees are to be awarded with an 'eye to moderation,' seeking to avoid either the reality or the appearance of awarding 'wind falls.' " *Evans v. State of Connecticut,* 967 F.Supp. 673, 691 (D.Conn.1997) (quoting *Beazer v. New York City Transit Authority,* 558 F.2d 97, 101 (2d Cir.1977)) (other citations omitted).

### 1. Reasonable Hourly Rate

■ Defendants strongly urge the court to find "a reasonable fee based upon the prevailing rate in the Northern District of New York, which is $150 per hour." Def. Memo. at 5. As noted at the outset, attorney Burns is seeking only $135.00 per hour [30] and attorney Smith is seeking $150.00 per hour. Because those rates easily fall within the prevailing rates for the Northern District of New York,[31] and because defendants do not object to the same, in calculating the fees due attorneys Burns and Smith, with the exception of travel time and non-legal tasks, which the court will separately address, the court will use the hourly rates which they are requesting. In accepting these requested hourly rates, the court has taken into account the legal experience and background of attorneys Burns and Smith, as more fully described in their respective supporting affidavits, as well as the complexity and nature of this case. Burns Aff., at ¶¶ 1–2; and Smith Aff., at ¶¶ 1 and 3.

**29.** There are exceptions to the rule that the rate of attorney compensation is governed by the market rates of the community in which the district court sits. *Segarra, supra,* 158 F.R.D. at 234–235 (internal quotations and citations omitted) (" '(1) the need for special expertise of counsel from a distant district, ..., (2) when local counsel is unwilling to handle the case, ..., and (3) when a lawyer files suit in his or her home district that is properly maintainable there, and the case is transferred to the forum district[ ]' "). Attorney Cohen is not suggesting that any of those exceptions might apply here, and thus the court declines to consider the same.

**30.** Attorney Burns candidly avers "that $135 per hour is eminently reasonable for an attorney with [his] training and experience in the Albany area." Burns Aff. at 6, ¶ 18.

**31.** *See, e.g., Kahre–Richardes Family Found. v. Baldwinsville,* 953 F.Supp. 39, 42 n. 4 (N.D.N.Y. 1997) (citation omitted) ("In the Northern District of New York, reasonable hourly rates for legal work are $150 ... for partners and $100 ... for associates."), and *DeCarlo v. Perales,* 963 F.Supp. 181, 184 (N.D.N.Y.1997) ("reasonable rates are $150.00 per hour for partner efforts") (citing *Haley v.Pataki,* 901 F.Supp. 85, 89 (N.D.N.Y.1995), *aff'd on other grounds,* 106 F.3d 478 (2d Cir.1997)).

■ The real controversy here centers on the $250.00 hourly rate which attorney Cohen, who, it appears, regularly practices in New York City, is seeking. In keeping with the prevailing rates in this District, and bearing in mind attorney Cohen's skill, experience and reputation as detailed in his supporting affidavit,[32] *vis-a-vis* other similarly situated attorneys in this community, the court finds that under the locality rule, he too will be compensated at the rate of $150.00 per hour,[33] except, as will be discussed, for travel time. The court is fully aware that this is a significant reduction from the hourly rate which attorney Cohen is seeking. However, under the locality rule, "[h]igh-priced attorneys coming into a jurisdiction in which market rates are lower will have to accept those lower rates for litigation performed there." *Segarra, supra,* 158 F.R.D. at 234 (quoting *Donnell, supra,* 682 F.2d at 251). And that is precisely the situation in which attorney Cohen finds himself.

### 2. Hours Reasonably Expended

As *Hensley* makes clear, in calculating the lodestar figure, the court must next consider

whether the hours expended by attorneys Burns, Cohen and Smith were reasonable. Except for the fees sought for preparation of the section 1292(b) motion seeking leave to file an interlocutory appeal, earlier discussed, the defendants do not challenge the reasonableness of the number of hours expended by plaintiffs' attorneys. Nevertheless, as the Second Circuit requires, the court has undertaken an independent examination of the contemporaneous time records[34] submitted by attorneys Burns, Cohen and Smith, to insure that " 'a certain number of hours were usefully and reasonably expended.' " *Haley, supra,* 106 F.3d at 484 (quoting *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir.1994) (*per curiam* )).

### a. Attorney Burns

■ In reviewing attorney Burns' time records, the court finds that, in general, the hours expended by him were reasonable. The court is somewhat bothered though by the ten separate entries to "review file," when those reviews do not appear to be

---

**32.** Cohen Aff. at ¶¶ 1–3.

**33.** Although this litigation has spanned more than fourteen years, because the representation by plaintiff's various attorneys did *not* span that same number of years, the court is under no obligation " 'to calculate and apply an average historic market rate for the period in question.' " *Contra Berry, supra,* 947 F.Supp. at 650 (quoting *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 146 (2d Cir.1993)) (because the case spanned the years 1989 through 1996, the court calculated and applied an "average historic market rate" for that period).

**34.** As this court fully explained in *Cooley v. Arena,* 90–CV–603, 1996 WL 494983, at *3 (N.D.N.Y. Aug.29, 1996)

The initial burden of documenting and proving entitlement to attorney's fees is on the party seeking such relief.... Thus, central to an application for attorney's fees is the submission of time records reflecting the hours expended by counsel in pursuing the successful claims of their client.... The rule in this Circuit is that in order for a party to recover attorney's fees, such time records must be made contemporaneously with the associated work.... By the same token, however, it is not necessary for the applicant to submit the actual diary entries made by the attorneys at

the time they perform the work.... Rather, reconstruction of such contemporaneous records on a computer and billing based on these records is adequate.... In the end, what is important is that these records ... specify, for each attorney, the date, the hours expended, and the nature of the work done....

*Id.* (internal quotations and citations omitted). For the most part, the records of attorneys Burns, Cohen and Smith satisfy those standards, although it would have been preferable for attorney Cohen in particular to have provided more specificity. For example, he did not state the nature of the legal research which he purportedly conducted. *See Jackson v. Cassellas,* 959 F.Supp. 164, 167 (W.D.N.Y.1997) (internal quotation and citation omitted) ("The Supreme Court has observed that counsel, of course, is not required to record in great detail how each minute of his time was expended[,] but at least counsel should identify the general subject matter of his time expenditures."). Therefore, although attorney Smith avers that she and attorney Cohen "carefully divided responsibility for different kinds of activities ... so as to avoid any unnecessary duplication of effort[,]" (and the court has no reason to question Ms. Smith's veracity), the court has no way of independently verifying whether the research efforts of attorneys Cohen and Smith were duplicative. *See* Smith Aff. at 3, ¶ 7.

related to any specific task.[35] Furthermore, there appear to be duplicative entries for review of the district court file.[36] Obviously some review of the file is necessary, particularly when an attorney first acquires a case. But, in the court's opinion, the time expended reviewing the file was excessive and thus attorney Burns is entitled to be compensated for only half of the time he billed for reviewing the file (8.45 hours, rather than 16.90 hours), particularly where the entries for such review are vague and do not provide the court with sufficient information to determine whether the hours expended on that particular task were reasonable. *See Jackson, supra,* 959 F.Supp. at 168 (and cases cited therein).

■ There is one other area to which the court finds attorney Burns devoted an excessive number of hours, and that is for trial preparation. His time records contain eight separate entries for trial preparation (excluding entries for trial preparation done in conjunction with other tasks), totaling 35.3 hours.[37] Standing alone, that figure might not seem unreasonable. When viewed in the broader context of this litigation as a whole, however, the court finds that time somewhat excessive, especially considering the fact that ultimately attorney Burns did not represent plaintiff during the trial.[38] Accordingly, the court will reduce by one-third the hours (from 35.3 hours to 23.5 hours) for which attorney Burns will be compensated for trial preparation.

■ Furthermore, there are two tasks performed by attorney Burns for which the court declines to compensate him, and that is

the work he did on plaintiff's clemency application,[39] and time spent reviewing the Western District of New York's manual for section 1983 prisoner cases.[40] It is not readily apparent that either of those tasks are relevant to this action. Therefore, because the court does not believe that that time was reasonably expended in connection with this action, attorney Burns will not be allowed to recover a fee for that 1.3 hours.

■ The remaining hours billed by attorney Burns were, in the court's opinion, reasonably expended. The court disagrees, though, that he should be compensated at the rate of $135.00 per hour for all of that time. Attorney Burns is not entitled to be compensated at the rate of $135.00 per hour for the .50 hours he expended to "request ... clients [sic] file at District Court[,]"[41] nor for the .70 hours he expended "[o]btain[ing] copies of pleadings at District Court[,]"[42] because those are administrative tasks which just as easily could have been done by a non-lawyer. Thus, as to those tasks which the court deems non-legal, attorney Burns will be compensated at the rate of $50.00 per hour. *See Cooley, supra,* 1996 WL 494983, at *4 (and cases cited therein) ("[T]he case law is clear that an attorney is not entitled to be compensated at the same hourly rate for the performance of legal and non-legal services.").

■ Likewise, attorney Burns also is not entitled to be compensated at the rate of $135.00 per hour for his travel time. Mr. Burns did not always distinguish between time spent performing legal work and his travel time in relation thereto. For example,

---

**35.** In contrast, there are numerous entries where attorney Burns reviewed the file in conjunction with, for example, drafting discovery demands or conducting legal research. *See, e.g.,* Burns Aff., exh. A thereto at 2 (entry for 9/9/92: "Review file; draft discovery demands"). In those instances, it is easier to see how the time expended reviewing the file was reasonable.

**36.** *See* Burns Aff. (2.20 hours on December 6, 1991; 1.10 hours on December 10, 1991; 2.0 hours on April 1, 1992; 2.70 hours on January 28, 1993; and .50 hours on February 11, 1993).

**37.** Burns Aff., exh. A thereto (entries 6/15/95; 6/19/95; 6/20/95; 8/6/95; 8/1995; 8/29/95; 9/6/95; and 9/13/95).

**38.** The court is unwilling to allow three separate attorneys to be compensated for all of their trial preparation time, especially when, in the court's view, one lawyer could easily have handled the trial of this case on his or her own.

**39.** *See* Burns Aff., exh. A thereto (.20 hours on 1/31/90 and .50 hours on 2/13/95).

**40.** *Id.* (entry 9/3/92, .60 hours).

**41.** *Id.* (entry 3/30/92).

**42.** *Id.* (entry 4/3/92).

on April 10, 1992, he billed a total of 7.40 hours for the following: "Review file; research; attend conference with client at Fishkill Correctional Facility[.]" Burns Aff., exh. A thereto at 1. Therefore, the court has undertaken that task. Based upon an estimated travel time of two hours between Albany and Fishkill Correctional Facility (where the plaintiff was incarcerated at the time), and the same estimated travel time between Albany and Syracuse, attorney Burns expended twenty-four hours in travel time.[43] In accordance with the practice in this District, attorney Burns will not be compensated for his travel time at his full hourly rate for the performance of legal services, particularly where there has been no showing that he was able to render legal services *en route. See id.* at *4 (and cases discussed therein). Although this court has previously awarded $50.00 per hour for travel time,[44] as Magistrate Judge Hurd recently did, the court will allow $65.00 per hour for that time. *DeCarlo, supra,* 963 F.Supp. 181, 184–85.

To summarize, after taking into account the foregoing reductions and deductions, the court finds that attorney James Burns is entitled to a total of $40,749.75 in fees, which includes time expended on this fee motion. *See id.* (and cases cited therein). That figure represents 289.85 hours for legal work, at the rate of $135.00 per hour, or $39,129.75; plus 1.20 hours for non-legal work, at the rate of $50.00 per hour, or $60.00; and twenty-four hours of travel time at the rate of $65.00 per hour, or $1,560.00.

### b. *Attorney Cohen*

■ As previously discussed, attorney Cohen will be paid at the hourly rate of $150.00, rather than the requested hourly rate of $250.00, except for travel time, for which he will be compensated at the rate of $65.00 per hour. In assessing whether he expended a reasonable number of hours on

this litigation, the court finds that he has, except with respect to trial time. As noted earlier, there was no need for two attorneys to be present throughout the trial of this straightforward section 1983 action. Thus, attorney Cohen will be compensated for half of the time he spent in trial, or fifteen hours. Deducting that amount, as well as the twenty-two hours he billed for travel, the court finds that attorney Cohen is entitled to be compensated for 117 hours of legal work at the rate of $150.00, or $17,550.00. He is also entitled to compensation at the rate of $65.00 for his twenty-two hours of travel time, or $1,430.00.

■ In addition to his fees, attorney Cohen is also seeking "expenses" in the amount of $1,007.00. These costs include $603.00 for lodging for four nights; $120.00 for his food for four days; $80.00 for gas and tolls; and $204.00 for clothes for plaintiff Blissett. Cohen Aff., attachment thereto. No documentation has been provided to substantiate these expenses, and so the court will disallow a third of those expenses. *See Berry, supra,* 947 F.Supp. at 653. Moreover, as to the costs of plaintiff's clothes, the court finds that is not a "reasonable out-of-pocket expense[ ] incurred by the attorney and which [is] normally charged fee paying clients[,]"[45] and thus, attorney Cohen will not be reimbursed for that expenditure. Consequently, attorney Cohen is entitled to be compensated in the amount of $535.00 for his expenses. Thus, the total award (fees *and* expenses) to attorney Cohen is $19,515.00.

### c. *Attorney Smith*

■ In accordance with the hourly rates previously discussed, the court finds that attorney Smith is entitled to payment of $2,612.25 for the 40.25 hours of travel time which she billed.[46] For the reasons already discussed, the court will divide by one half the time expended by attorney Smith attend-

---

43. *Id.,* exh. A thereto (entries 4/10/92; 11/4/92; 4/17/92; 4/30/93; 6/12/93; and 6/30/95).

44. *Cooley, supra,* 1996 WL 494983, at *4 (and cases cited therein).

45. *See Cooley, supra,* 1996 WL 494983, at *6 (internal quotations and citations omitted).

46. Given the usual hourly rate of $50.00 to $65.00 awarded in this District for travel time, the court will not award attorney Smith the higher requested hourly rate of $112.50.

ing the trial of this action, as well as the time expended reviewing the file where the justification for such review is not readily apparent from her time records. This results in a reduction from thirty to fifteen hours of compensable trial time; and a reduction from eleven to 5.5 hours for compensable time expended reviewing the file. Attorney Smith's time is subject to one further reduction, and that is for time expended preparing for trial. Based upon her time records, attorney Smith expended thirty-four hours preparing for trial.[47] The court will reduce that figure by one-third, however, in keeping with its earlier observation that this is a trial which easily could have been conducted by one attorney.

 Attorney Smith's time sheet also contains a couple of administrative tasks for which she will be compensated at the rate of $50.00.[48] Specifically, she is entitled to $50.00 per hour for the .25 hours expending transmitting a FAX to attorney Burns on July 19, 1996, and the 1.50 hours expended "[a]ssembling ... pretrial memo/letter to Court[.]" Smith Aff., attachment thereto at 2. Attorney Smith is not entitled to payment, however, for the one hour she spent on January 13, 1997, preparing jury instructions,[49] because, in the court's opinion, that effort was duplicative in that jury instructions previously had been prepared by attorney Burns. Taking into account the foregoing, the court finds that attorney Smith is entitled to be compensated for 202.90 hours of legal work, which includes time expended on this fee motion, at the rate of $150.00 per hour, or $30,435.00. Additionally, she is entitled to be compensated for 40.25 hours of travel time at the hourly rate of $65.00, or $2,616.25, and at the hourly rate of $50.00 for the 1.75 hours she expended on administrative tasks. Accordingly, attorney Smith's total fee award is $33,138.75.

To conclude, the court grants plaintiff Donovan Blissett's motion for attorneys' fees in the total amount of $93,403.35 ($40,749.75 for the services of attorney Burns; $19,515.00

for the services of attorney Cohen; and $33,-138.75 for the services of attorney Smith). The defendants are directed to promptly make payment in accordance herewith.

IT IS SO ORDERED.

---

**47.** Smith Aff., (entries 6/7/96; 6/13/96; 6/17/96; 6/21/96; 6/23/96; 6/27/96; 6/28/96; 6/29/96; and 6/30/96).

**48.** *See* discussion *supra* at 132.

**49.** Smith Aff., attachment A thereto at 3.