No. 99-464

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 276N

RUDOLPH STANKO,

individually,

Plaintiff and Appellant,

v.

RON ROWTON, individually and in his official

capacity as Fergus County Sheriff, and THOMAS

P. MEISSNER, individually and in his capacity

as Fergus County Attorney,

Defendants and Respondents.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Rudy Stanko, Billings, Montana (*pro se*)

For Respondents:

Thomas P. Meissner, Fergus County Attorney, Lewistown, Montana

Submitted on Briefs: March 9, 2000

Decided: October 30, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Rudolph Stanko (Stanko) was convicted at jury trial of two counts of reckless driving in the District Court of the Tenth Judicial District, Fergus County, and sentenced to 120 days confinement in the Fergus County Detention Center (FCDC) after appealing a justice court conviction for the same offense. We denied his petition for habeas corpus on April 20, 1999. Stanko filed what purported to be a class action against Fergus County Sheriff Ron Rowton and Fergus County Attorney Tom Meissner, individually and in their respective capacities as Fergus County officials. Stanko asserted several claims, alleging that various state and federal legal, administrative and constitutional rights were being violated due to conditions of his incarceration. A series of letters was exchanged between Stanko and County Attorney Meissner outlining Stanko's concerns over these conditions. Numerous accommodations were made to ameliorate Stanko's concerns as reflected in the record of these communications. The record shows the District Court found that the requisite elements for a class action were not present and that it dismissed Stanko's claims for monetary damages for failure to comply with the provisions of the Montana Tort Claims Act. The District Court dismissed Stanko's administrative, constitutional and statutory claims as well. We affirm the District Court's rulings.

¶3 Stanko's eight pages of issues on appeal are consolidated into the following legally cognizable issues:

¶4 1. Whether the District Court erred in denying Stanko's request that his case be treated as a class action.

¶5 2. Whether the District Court erred in granting the defendants' motion to dismiss Stanko's claims for monetary damages under the Montana Tort Claims Act.

¶6 3. Whether the District Court erred in dismissing all of Stanko's constitutional, statutory and administrative claims.

Issue 1

¶7 **Whether the District Court erred in denying Stanko's request that his case be treated as a class action.**

¶8 The mandatory elements for certification of a class are found in Rule 23, M.R.Civ.P. Stanko's brief in support of class certification, received by the District Court March 22, 1999, merely reiterated the required elements from the rule, with no discussion of how the elements apply to this case. His attempt in his reply brief to apply these elements to his case is simply not persuasive. Rules 23 (a) and (b) are clear that all prerequisites must be satisfied before a suit is maintainable as a class action. Upon our review of the record, we conclude that Stanko's unsupported assertion that he will fairly and adequately protect the interests of an indeterminate class for an indeterminate time is unpersuasive, and the test fails on this element alone. The District Court did not err in its determination that the elements of class certification were not met. We affirm the District Court's denial of class certification to Stanko's complaint.

Issue 2

¶9 **Whether the District Court erred in granting the defendants' motions to dismiss Stanko's claims for monetary damages under the Montana Tort Claims Act.**

¶10 It is well-settled that all tort claims against the State or its political subdivisions must first be filed with and adjudicated by the Department of Administration or the appropriate agent of the political subdivision, here the County Clerk. *See*, § 2-9-301 (3), and generally §§ 2-9-101 through -805, MCA, the State Tort Claims Act. The record shows that Stanko did not comply with this administrative requirement, and therefore the District Court had no jurisdiction to review the matter. *See*, *Cottonwood Hills v. Dept. of Labor and Ind.*

(1989), 238 Mont. 404, 407, 777 P.2d 1301, 1303.

¶11 However, Stanko correctly cites Article II, Section 18, of the Montana Constitution for the proposition that no governmental entity shall have immunity from suit for injury to a person or property unless specifically provided by law by a 2/3 vote of each house of the Montana Legislature. *See also* § 2-9-102, MCA, codifying the constitutional requirement. House Bill 68 was signed into law by Montana's governor on April 22, 1997, after being passed by a margin of 67 to 29 in the Montana State House of Representatives, and by a margin of 45 to 5 in the Montana State Senate. Legislative history shows the bill was offered by its sponsor as a direct result of similar legislation signed into law by the President of the United States, the Prison Litigation Reform Act of 1996, attempting to reduce the number of lawsuits and appeals by incarcerated persons. House Bill 68 is now codified within the Montana Tort Claims Act as § 2-9-108 (2), MCA.[1] It states:

> The state, a county, municipality, taxing district, or any other political subdivision of the state is not liable in tort action for damages suffered as a result of negligence of an officer, agent, or employee of that entity by a person while the person was confined in or was otherwise in or on the premises of a correctional or detention institution or facility to serve a sentence imposed upon conviction of a criminal offense. The immunity granted by this subsection does not extend to serious bodily injury or death resulting from negligence or to damages resulting from medical malpractice, gross negligence, willful or wanton misconduct, or an intentional tort.

¶12 Stanko's claims are based upon alleged damages arising from his detention as a prisoner in the FCDC. The record shows Stanko's claims do not arise due to his own death or others, or serious bodily injury resulting from negligence, or to damages arising from medical malpractice, gross negligence, willful or wanton misconduct, or an intentional tort. Therefore even if Stanko had complied with the requirements of the Montana Tort Claims Act he would not be entitled to money damages under Montana law. We affirm the District Court's dismissal of Stanko's claims for money damages under the Montana Tort Claims Act.

Issue 3

¶13 **Whether the District Court erred in dismissing all of Stanko's constitutional, statutory and administrative claims.**

¶14 First, there appears to be some confusion among the parties as to whether Stanko is appealing the District Court's refusal to grant his motion for injunctive relief. Though County Attorney Meissner briefs this issue, Stanko emphatically states in his reply brief that, "Again, the Plaintiffs are not appealing the injunctive relief ruling. The respondents (sic) two page argument citing the Van Loan case is not relevant." This is consistent with his written statement to Judge Christensen, received by the court May 13, 1999, where Stanko stated, "it appears you should trash the preliminary injunctive pleading that I requested four months ago . . . As you said, I'll be released before you have a decision; (sic) making it 'moot' . . ." We take him at his word and will not address this argument as Stanko has withdrawn any claims relating to his request for injunctive relief.

¶15 Stanko has attempted to equate the aspirational goals contained in the Montana Jail Standards, passed by the Montana Sheriffs' and Peace Officers' Association and the Montana Association of Counties, with administrative rules, which are promulgated by government agencies and which are subject to public commentary and other formal rule-making procedures. Because the Montana Jail Standards are not administrative rules, we will neither review nor apply them as such. Furthermore, the record shows that Sheriff Rowton has not adopted these voluntary, model standards for the FCDC. We conclude that based on the record no administrative rules have been violated by either County Attorney Meissner or Sheriff Rowton.

¶16 Stanko further alleges that the conditions of his incarceration constituted a violation of constitutional and civil rights under the federal civil rights statutes set forth in Title 42 of the U.S. Code. Relevant as well is the aforementioned Prison Litigation Reform Act of 1996 (PLRA), codified at 28 USC § 1915A. The purpose of the PLRA is to discourage filing of frivolous suits and appeals by prisoners. *Blissett v. Casey* (N.D.N.Y. 1997), 969 F. Supp. 118, affirmed 147 F.3d 218, certiorari denied 119 S.Ct. 2392, 144 L.Ed.2d 793. The PLRA states:

> (a) Screening. The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (b) Grounds for dismissal. On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

(c) Definition. As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

28 USC, § 1915A

¶17 Working hand-in-glove with the PLRA is the Civil Rights of Institutionalized Persons Act (CRIPA), codified at 42 USC, § 1997e. The relevant portion of CRIPA states:

Suits by prisoners

(a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 USC 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

(b) Failure of State to adopt or adhere to administrative grievance procedure. The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 3 or 5 of this Act [42 USC § 1997a or 1997c].

(c) Dismissal.

(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 USC 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

(2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim

upon which relief can be granted, or seeks monetary relief from defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

¶18 Section 2-9-108(2), MCA, and these federal statutes are consistent in their language and their policy objective of providing relief in only the more serious claims against governments at all levels regarding conditions of incarceration. The disjunctive "or" in 28 USC § 1915A (b) and in 42 USC § 1997e(c)(2) allow dismissal after examination of the merits of a particular case, or if the case seeks monetary relief from those immune to such a claim, regardless of the merits. Here, Stanko seeks monetary relief from those who have been granted immunity by the Montana State Legislature as provided by Montana's constitution. The District Court properly dismissed Stanko's claims on this basis alone. In addition, as noted above, Stanko did not exhaust his administrative remedies.

¶19 Moreover, we conclude the record created at the hearing on Stanko's application for preliminary injunctive relief also supports the District Court's dismissal of Stanko's constitutional and civil claims. Stanko makes numerous claims about the conditions of incarceration at the FCDC, but provides no evidence other than his own subjective observations. He cites the model jail standards, which Sheriff Rowton testified that he has not adopted, as the basis for his administrative claims. We have stated that we will not consider the model jail standards as administrative rules.

¶20 Pursuant to the hearing on Stanko's petition for injunctive relief, the District Court issued an order denying Stanko's motion for preliminary injunction and dismissing his complaints. The District Court found that, "it became clear the most substantial allegations made by Stanko had been remedied or were exaggerated initially." For example, Stanko subjectively averred that the cells' temperature was "just above freezing," but he offered no specific evidence on temperature in support. Also, while Stanko's original cell had a defective shower unit, he was moved within a week from the cell and the shower was repaired. The chief detention officer for Fergus County testified upon questioning by Stanko regarding jail temperatures that "we try to keep it at 70 (seventy) degrees." Stanko offered no evidence to counter the detention officer's testimony. Such a temperature is certainly consistent with any justiciable standard. The record is replete with testimony by the newly-elected Sheriff Rowton, and letters from County Attorney Meissner to Stanko, that they took Stanko's concerns about conditions of incarceration quite seriously and that they did everything within their power to address the concerns, whether legitimate or not. Much to the apparent chagrin of the District Court as reflected in the evidentiary hearing,

Sheriff Rowton actually went beyond the scope of jail policy to allow Stanko to keep his cellular telephone for a time to accommodate his claimed business needs.

¶21 The trial court noted in detail the specific complaints alleged by Stanko. The court concluded from the evidence presented at the hearing for injunctive relief that basic human dignity was accorded all prisoners incarcerated in the FCDC, and that they are provided safe, secure, heated cells, adequate showers and a nutritionally balanced diet. Stanko offered no evidence in support of his claims that his rights were violated or that his health was severely and adversely affected by the conditions of his detention at FCDC. Given that he was allowed access to trained medical personnel during the time of his incarceration, this should have been easy to do if his claims had merit. Vague testimony by the part-time public defender while undergoing questioning by Stanko about the relative paleness of Stanko's skin at different times during his incarceration does not meet Stanko's burden of proof.

¶22 The credibility of witnesses and the weight to be given their testimony are best determined by the trier of fact; disputed questions of fact and credibility will not be disturbed on appeal. *State v. Ahmed* (1996), 278 Mont. 200, 212, 924 P.2d 679, 686. If the evidence conflicts, it is within the province of the trier of fact to determine which will prevail. *Ahmed* at 212. Here, the District Court had numerous opportunities to weigh the substantive evidence presented by both sides, and to consider matters outside the pleadings. The court's findings are supported by substantial evidence and are not clearly erroneous. We find no fault with the court's determination that the FCDC meets the basic needs of prisoners.

¶23 In conclusion, the record shows the District Court carefully considered all of Stanko's allegations. Stanko asserts that he is not appealing the lower court's treatment of his motion for injunctive relief, stating that this part of his claim is moot. Finally, the District Court determined, and we concur, that Stanko did not comply with the requirements of the Montana Tort Claims Act. Furthermore, based on the provisions of § 2-9-108(2), MCA, the PLRA and the CRIPA, Stanko's constitutional, statutory and administrative claims were properly dismissed.

¶24 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

1. Stanko cites to Article II, Section 18 and the 2/3 vote requirement necessary to waive governmental immunity. He evidently was not aware that the 1997 legislature, in apparent compliance with this constitutional requirement, adopted § 2-9-108(2), MCA. Stanko did not challenge the constitutionality of this statute.